**UNITED STATES of America**

v.

**Arthur Samuel SULLIVAN, Defendant.**

**No. 70 Cr. 565.**

United States District Court,
S. D. New York.

Feb. 2, 1971.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for the United States.

John M. Walker, Jr., Asst. U. S. Atty., S. D. N. Y., of counsel.

Theodore Krieger, New York City, for defendant.

METZNER, District Judge:

The defendant, Arthur Samuel Sullivan, along with Bernard Carter, has been indicted on charges of armed robbery of the Franklin National Bank, 433 Broadway, New York City. Sullivan moves pursuant to Rule 41(e), Fed.R. Crim.Proc., to suppress certain evidence which was seized at the time of his arrest.

The bank robbery in question occurred on June 26, 1970. During the course of the robbery, a teller activated a bank surveillance camera, which took photographs while the robbery was in progress. Several of these photographs were published in the Daily News on June 28, 1970, with a request for information concerning the two persons depicted. In response to this request, the FBI received telephone calls from anonymous informants revealing the names and whereabouts of Sullivan and Carter.

On the basis of these tips, officers from the FBI and the New York City police went to 93 West Tremont Avenue in the Bronx about 11 o'clock in the morning of June 29, 1970. They had not obtained either an arrest warrant or a search warrant. After knocking on the door of Apartment 3–A and identifying themselves, the officers asked for Sullivan and Martha Ferreira to come out. Ferreira was the lessee of the apartment. She unlocked the door and stepped out into the hall. Agent Rasmovich then called from the doorway of the apartment for Sullivan to come out where he could be seen. Sullivan came into the living room, and Rasmovich, recognizing Sullivan from the bank photograph, went into the apartment and placed him under arrest.

A search of the apartment followed. Live ammunition was found in the bedroom closet; $600 was discovered underneath a mattress; $1100 was concealed in a stereo speaker; in addition, a sweater, two spent .38 caliber cartridges, and tinted sunglasses were in plain view in the living room and were seized.

The defendant first contends that the search was invalid because there was no probable cause for the arrest. The constitutional validity of a

warrantless arrest depends upon "whether, at the moment the arrest was made, the officers had probable cause to make it." Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The defendant argues that his arrest was based on information received from anonymous informants and was therefore illegal under the tests laid down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ It is clear that if the arrest in the present case depended solely upon anonymous tips that Sullivan was the person who had robbed the Franklin National Bank, it would be illegal under the *Aguilar* test. If the police have no idea who their informant is or how he received his information or on what he based his tip, they cannot know whether the informant is credible or his information reliable, and therefore they can have no probable cause. *Aguilar*, 378 U.S. at 113, 114, 84 S.Ct. 1509; *Spinelli*, 393 U.S. at 416, 89 S.Ct. 584.

■■ This is not a case where the arrest turns upon the reliability of an informer. See United States v. Dalli, 424 F.2d 45, 48 (2d Cir. 1970). In addition, it is not necessary for an agent to know the identity of the person to be arrested in order to sustain a finding of probable cause. He need only be possessed of sufficient knowledge to support a prudent man's belief that a crime has been committed and that the man being arrested is the one who committed the crime. United States v. Llanes, 398 F.2d 880, 883 (2d Cir. 1968). According to *Spinelli*, a tip which fails to meet the test of *Aguilar* may still be the basis for probable cause if it is sufficiently corroborated by independent sources.

■ In the present case, there are two crucial corroborating facts which remove any doubt as to whether there was probable cause to arrest Sullivan. In the first place, the FBI had detailed knowledge that a crime had been committed which was derived from a source other than an anonymous informant. See United States v. Ross, 424 F.2d 1016 (4th Cir. 1970), appeal pending. In *Aguilar* and *Spinelli*, on the other hand, both the fact of the crime and the location of the contraband came from the informant.

In the second place, substantial corroboration was added by the observations of the FBI agents themselves. They possessed photographs which had been taken during the commission of the crime. Rasmovich had examined those pictures and from the knowledge he obtained from this examination he could identify Sullivan prior to the arrest.

Defendant argues that forcing a person to open an apartment door so as to obtain probable cause nullifies the protection of the Fourth Amendment. The court cannot conceive of how else law enforcement officers should or could have acted in the circumstances in this case.

A teller in a bank had been shot in the course of a robbery. Pictures of the robbers were taken during the commission of the crime. Anonymous tips were received as to the whereabouts of the robbers. At that moment sufficient basis for an arrest warrant did not exist. However, the officers could not be immobilized from investigating the tips because of lack of probable cause to make an arrest.

■ At the apartment they announced their identity before the door was voluntarily opened by Ferreira. Both the officers and Ferreira admit that they then called out for the defendant to come forward. This he did. The officers did not enter the apartment and make the arrest until after they had been satisfied that the defendant was one of the men in the photographs taken at the time of the holdup.

Sufficient has been shown to sustain a finding that probable cause existed to arrest the defendant.

The next question raised goes to the validity of the consent of Ferreira to the search of the apartment conducted by the arresting officers. Obviously the search exceeded the bounds prescribed by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The broader search, justified in the narcotics cases, does not apply here. See United States v. Pino, 431 F.2d 1043 (2d Cir. 1970); United States v. Lozaw, 427 F. 2d 911, 917 (2d Cir. 1970).

I find that the written consent to the search of the apartment was executed by Ferreira in the small hallway outside the apartment before any search was conducted. She was the lessee of the apartment. The consent she signed, which she read and understood, stated that she had been advised of her right to refuse permission to search, and that the permission was freely given without threats or promises.

When she opened the door and came out into the public hallway, there were only three or four officers on the landing in front of the apartment. They did not menace or threaten her in any way. In fact, she was drawn away from the entrance so as to be out of the line between the officers and the person inside the apartment.

Obviously, no person remains calm in the face of an arresting party with drawn guns. However, these officers were justified in having their guns handy, since they were looking for someone who had committed an armed robbery. The circumstances were not such as to prevent the exercise of a free choice to voluntarily assent to the search.

Lastly, defendant contends that the written consent ran only to the two agents named in the paper, and thus any property seized by other agents is inadmissible. I find this proposition too specious to justify discussion.

Motion denied. So ordered.