COMMONWEALTH *vs.* JOHN J. DINNALL.

Suffolk.    May 7, 1974. — August 13, 1974.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Search and Seizure. Constitutional Law,* Search and seizure. *Narcotic Drugs. Practice, Criminal,* Exceptions: failure to save exception. *Evidence,* Relevancy and materiality, Cumulative evidence. *Error,* Whether error harmful.

There was no violation of rights under the Fourth Amendment to the United States Constitution of the defendant in a criminal case by reason of the employment by an affiant in an affidavit, in support of an application for a search warrant, of a conversation in an apartment relative to the sale and use of narcotics heard by police in a hallway which could be freely entered by anyone. [166-168]

A search warrant for narcotic drugs and implements "kept or deposited by Jane Doe and John Doe in certain rooms in the second floor apartment of the building situated [at] and numbered seventeen" on a named street in a designated city adequately described the person or place to be searched under G. L. c. 276, § 2 [168]; drugs and implements, and an airline ticket, seized in the apartment were properly admitted in evidence at the trial of indictments against a defendant who either lived in the apartment or spent a great deal of time there. [168-169]

Failure of the defendant at a criminal trial to lodge an exception to the admission of evidence objected to brought nothing before this court for review. [169]

At the trial of indictments for unlawful possession of cocaine, cannabis, and heroin, inferences that the defendant was in possession of such drugs and was guilty were warranted by evidence that he endeavored to slam the door of an apartment shut when police officers approached, that the officers there observed the usual implements of narcotic activity and seized the drugs, and that a driver's license and an airline ticket indicating that he lived in the apartment were found in it. [169-170]

INDICTMENTS found and returned in the Superior Court on September 16, 1971.

The cases were heard by *Leen,* J.

*Stephen R. Katz* for the defendant.

*Imelda C. La Mountain,* Assistant District Attorney, for the Commonwealth.

REARDON, J.   The defendant was tried on four indictments charging him with unlawful possession of cocaine, unlawful possession of cannabis, unlawful possession of heroin, and possession of heroin with intent to sell. A judge in a jury waived trial found the defendant guilty on the first three charges, and not guilty on the fourth. The defendant comes here on appeal under applicable provisions of G. L. c. 278, §§ 33A-33G, and argues assignments of error which will be severally considered.

1. The defendant first argues that the search of the apartment in which the narcotics were discovered was not conducted pursuant to a valid search warrant in that the warrant was obtained by virtue of a prior surveillance of the police which violated the defendant's right to privacy as guaranteed by the Fourth Amendment to the United States Constitution. It appears that on April 23, 1971, acting on a warrant, several Boston police officers entered the second floor apartment at 17 Erie Street in Dorchester where various narcotics, and implements employed in measuring, diluting and packaging the same, were seized. Prior to trial the defendant moved to suppress the evidence which was there obtained. A police detective gave evidence at the hearing on the motion that acting on information from a reliable informant the police commenced surveillance in and around 17 Erie Street prior to April 22. The affidavit in support of the application for the warrant stated in part that between April 19 and April 22, 1971, a number of suspected users and sellers of narcotics had entered and left the apartment. It was further stated that during certain observations conversation was heard from the apartment relative to the sale and uses of narcotics. The contention is that this was an illegal eavesdropping which invalidated the search warrant. Number 17 Erie Street is a three-story apartment house. The front entrance affords a separate stairway to each of the three apartments in the building. The entrance to the rear of the building is by a common

stairway leading to the second and third floor apartments. The conversation was heard by the officers while they were in the second floor hallway outside of a kitchen door. There was testimony that no electronic equipment was used to hear this conversation and that no officer even placed his ear to the door. It is our view that in employing this conversation as a partial basis for the issuance of the warrant there was no violation of the defendant's Fourth Amendment rights. The Commonwealth has cited *United States* v. *Llanes,* 398 F. 2d 880 (2d Cir. 1968), cert. den. 393 U. S. 1032 (1969), where narcotic officers stationed themselves in the hallway and heard conversations from within an apartment carried on in a tone of voice which was audible in the hallway. The court there distinguished the constitutional protection outlined in *Katz* v. *United States,* 389 U. S. 347 (1967), and noted also Mr. Justice Stewart's comment therein: "What a person knowingly exposes to the public, *even in his own home* or office, is not a subject of Fourth Amendment protection" (emphasis supplied). *Id.* at 351. In the *Llanes* case, the court said, "We believe that conversations carried on in a tone of voice quite audible to a person standing outside the home are conversations knowingly exposed to the public." 398 F. 2d at 884 (1968). See *United States* v. *Wilkes,* 451 F. 2d 938, 941, n. 6 (2d Cir. 1971). The defendant has referred to *United States* v. *Case,* 435 F. 2d 766 (7th Cir. 1970), as governing the situation in this case. There it was held that the surreptitious listening by government agents to conversations overheard in the hallway was an invasion of the right of privacy. However, it is to be noted that the agents in that case were listening in a hallway which was kept locked and which was used "by a very confined group, and, most of the time, limited to the proprietors of the stores in the building." *Id.* at 769. The court distinguished the *Llanes* case on those facts. Here we have an area which could be freely entered by anyone. See *Commonwealth* v. *Thomas,* 358 Mass. 771, 774 (1971); *Commonwealth* v. *Anderson,* 362 Mass. 74, 75, n. 1 (1972). We see no vice in the employment of the information which was obtained nor error in denying

the motion to suppress evidence procured through the search warrant.

2. The defendant next contends that the warrant which was issued for a search of 17 Erie Street and the second floor apartment thereof was void in that it lacked specificity, and that the items seized should not have been admitted. The warrant issued stated that there was probable cause to believe that narcotic drugs and implements were "kept or deposited by Jane Doe and John Doe in certain rooms in the second floor apartment of the building situated [at] and numbered seventeen (17) Erie Street in [Boston]." The warrant was issued on April 23, 1971, and executed the same evening. Drugs and implements, and an Eastern Airlines ticket which carried the name of the defendant and listed his address as 17 Erie Street, Dorchester, were seized. There was an adequate description of the person or place to be searched. G. L. c. 276, § 2. The description falls within the requirements which we have frequently stated. See *Commonwealth* v. *Pope,* 354 Mass. 625, 628-629 (1968). Directly in point is *Commonwealth* v. *Franklin,* 358 Mass. 416 (1970), which makes reference to the focus of the police on a place rather than on the person occupying the place. The *Franklin* case contains a full discussion of the requirements for a valid warrant which it is not necessary to repeat here.

3. There was no error in the admission in evidence by the trial judge of the tinfoil, strainers, spoons, and packets of cocaine, heroin, and marihuana found in the apartment. It is argued by the defendant that there was no evidence to connect these items with him. We view the introduction of all of these items as proper and as circumstantial evidence bearing on the charges against the defendant. *Commonwealth* v. *Holiday,* 349 Mass. 126, 128 (1965). *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970). There was evidence that the defendant either lived in the apartment or spent a great deal of time there. That there were others in the apartment as well as the defendant when the items were seized makes no difference. Possession need not be exclusive but may be joint, and such joint possession

may be proved by circumstantial evidence. See *Commonwealth* v. *Guerro,* 357 Mass. 741, 751-753 (1970); *Commonwealth* v. *Frongillo,* 359 Mass. 132, 138 (1971).

4. There was no error in the admission of the Eastern Airlines ticket. It was issued in the name of the defendant and gave 17 Erie Street, Dorchester, Massachusetts, as his address, and also gave his telephone number. Evidence was given by a Boston police officer that when the defendant was booked at the police station he gave his address as 17 Erie Street, Dorchester. The evidence which is objected to, hence, was cumulative and had no prejudicial effect. *Commonwealth* v. *Gliniecki,* 339 Mass. 464, 468-469 (1959). *Commonwealth* v. *Zezima,* 365 Mass. 238, 242 (1974).

5. It is next argued to us that there was error in the admission in evidence of the defendant's answer to a question in cross-examination that he had a drug habit and was aware of what "cocaine looks like." There was no exception lodged after objection to this evidence. As we have repeatedly stated, there is thus nothing before us for review. *Commonwealth* v. *Underwood,* 358 Mass. 506, 509, fn. 2 (1970), and cases cited. *Commonwealth* v. *Miskel,* 364 Mass. 783, 792 (1974). In view of the foregoing we are not disposed to discuss the defendant's argument at this point except to observe that it is of dubious worth.

6. Finally, in our view the defendant's motion for findings of not guilty was properly denied. It would appear that in a police raid the defendant, seeing the invading officers, endeavored to slam the door shut. They thereafter gained entrance and observed tinfoil, a playing card, some white powder, a strainer and some spoons, the usual implements of narcotic activity. A white powder given to the officers by one of the women present was later discovered to be cocaine. Testimony was offered through a police expert on the customary employment of the items found in the preparation of narcotics and their use. The defendant's driver's license was found in a coat in a clothes closet, while the airline ticket previously alluded to was found in a bureau drawer. We hold that there was more than enough evidence introduced to produce the inferences that the

defendant was in possession of the unlawful substances drawn from these circumstances to support the judge's findings. See *Commonwealth* v. *Fiore,* 364 Mass. 819, 822 (1974).

*Judgments affirmed.*