COMMONWEALTH *vs.* ROSEMARIE BOSWELL
(and three companion cases[1]).

Suffolk. November 7, 1977. — January 20, 1978.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Arrest. Probable Cause. Constitutional Law*, Arrest, Probable cause.

Although police officers, after ascertaining that surveillance photographs taken during a robbery provided a good representation of the robbers, had probable cause to arrest the persons shown in the photographs, they were not required to obtain "Jane Doe" warrants for the arrest of these persons before investigating an anonymous tip giving the names and addresses of the robbers. [267-268]

Police who had received an anonymous tip giving the names and addresses of participants in a robbery did not have probable cause to ar-

---

[1] Of the companion cases, one is against Rosemarie Boswell, and two are against Tracey Toney.

rest the named individuals nor to search for them at the given address-
es until policemen went to one of the addresses and recognized the per-
son answering the door from photographs taken during the robbery.
[268-269]

For the purposes of the rule prohibiting a warrantless entry into a dwell-
ing to arrest in the absence of sufficient justification for the failure to
obtain a warrant, entry into the hallway of an apartment building was
not an entry into a dwelling. [269-270]

When probable cause to arrest is in doubt, the prohibition against a war-
rantless entry into a dwelling to arrest in the absence of sufficient justi-
fication for the failure to obtain a warrant does not prevent the police
from knocking on the door of a dwelling in the hope that a suspect will
appear, nor does it prevent them from arresting the suspect in the
dwelling upon probable cause and exigent circumstances even though
the exigency is foreseeable. [270-271]

INDICTMENTS found and returned in the Superior Court
on February 25, 1977.

A pre-trial motion to suppress evidence was heard by *Di-
mond, J.*

The cases were reported by *Wilkins, J.*, following his al-
lowance of the Commonwealth's motions for interlocutory
appeals in the Supreme Judicial Court for the county of Suf-
folk.

*D. Lloyd Macdonald,* Assistant District Attorney, for the
Commonwealth.

*Michael Anton Laurano* for the defendant Boswell.

*Leonard B. Mandell* for the defendant Toney.

BRAUCHER, J.  Three women robbed a store, and surveil-
lance cameras took their photographs. Later an anonymous
telephone informant gave the police their names and ad-
dresses. The police went to the addresses without warrants,
identified the defendants as two of the women shown in the
photographs, and arrested them. A judge of the Superior
Court ruled that the arrests were unlawful under *Common-
wealth* v. *Forde,* 367 Mass. 798 (1975), and that statements
made by the defendants soon after their arrests should be
suppressed under *Wong Sun* v. *United States,* 371 U.S. 471
(1963), notwithstanding the "diligence and good faith and
conscientiousness of the police." We reverse.

The defendants were indicted for armed robbery and for assault and battery by means of a dangerous weapon. Before trial the judge made the suppression orders in question. A single justice of this court allowed the Commonwealth's applications for interlocutory appeals, and reported the appeals to this court for hearing. The two appeals were consolidated.

We summarize the evidence produced at the hearing on the motions to suppress. The store is a combination florist shop and post office in Roxbury. About 2:30 P.M. on February 1, 1977, a saleswoman admitted three women. One, who was carrying a shotgun, told her to lie on the floor, and she did. She was then struck on the back of the head and knocked out.

Photographs of the robbers were taken by surveillance cameras in the store, and were shown to the saleswoman a few days later. She said the photographs were a good representation of the three women who entered the store. On February 2, 1977, a postal inspector identified one of the women in the surveillance photographs as Cassandra Alexander, whom he had previously arrested. But he apparently did not so inform the police, who were unable to identify any of the three women. In the afternoon of February 9 the investigating Boston police officer received an anonymous telephone tip giving names and addresses of the three robbers: Cassandra Kincaid and Tracey Toney at 14 Townsend Street, and Rosemarie Boswell at 64 Holworthy Street, apartment 5.

About 9 A.M. on February 10 four or more police officers and postal inspectors went to 14 Townsend Street without a warrant. They went through an open outer door and knocked on the door of the second floor apartment of the defendant Toney. She opened the door, the investigating officer recognized her from the surveillance photographs, and he identified himself and told her she was under arrest for the robbery. About 9:30 A.M. the officers went to the Holworthy Street address without a warrant. They went through open doors on the first floor and knocked on the

door of the defendant Boswell's apartment upstairs. A boy about fifteen years old opened the door, the investigating officer saw and recognized the defendant Boswell, and he identified himself and told her she was under arrest for the robbery. The defendant Boswell, however, testified that the officer did not see her until after he entered the apartment.

Within an hour after the arrests, the defendants were given Miranda warnings at the police station, and they made the statements which have been ordered suppressed.

The judge ruled that the anonymous tip did not provide probable cause for arrest, and seriously questioned whether corroboration of the tip could be obtained by warrantless entry into a dwelling house. But, he said, he did not have to determine whether there was probable cause, because under the *Forde* case there cannot be a warrantless arrest in a dwelling in the absence of sufficient justification for the failure to obtain a warrant. The Commonwealth has the burden of justifying police conduct without a warrant, he said, and in this case there must be proof of exigent circumstances excusing the lack of an arrest warrant. He found no such exigent circumstances and therefore ruled that the arrests were illegal.

1. *Scope of the issues presented.* The defendants argued that their statements should be suppressed on three grounds: (1) that there was no probable cause to arrest them, (2) that there was no justification for arresting them in their dwellings without warrants, and (3) that there was no showing of a knowing and intelligent waiver of the rights of either of them. The prosecutor said, "I will be very brief because I consider these motions to border on the spurious," and the judge warned him not to be too brief. The judge sustained the defendants' second argument, and did not rule on probable cause or waiver. The Commonwealth did not contend, and does not argue on appeal, that the defendants' statements were not fruits of the arrest under *Brown* v. *Illinois,* 442 U.S. 590 (1975). See *Commonwealth* v. *LeBlanc,* 373 Mass. 478, 487-488 (1977). Cf. *United States* v. *Jarvis,* 560 F.2d 494, 498 (2d Cir. 1977) (identification after illegal arrest).

A single justice of this court has determined, in the words of G. L. c. 278, § 28E, "that the administration of justice would be facilitated" by this interlocutory appeal, and the issues presented may well have importance in other cases than this one. We recognize that the Commonwealth's right to present legal evidence, if not vindicated at this stage, might be irretrievably lost. But the suppressed evidence is not dispositive of the case. The illegality of the defendants' arrests, if they were illegal, does not prevent the trial from going forward. *Johnson* v. *Louisiana*, 406 U.S. 356, 365 (1972). *Commonwealth* v. *Gorman*, 288 Mass. 294, 300-301 (1934), and cases cited. The Commonwealth claims to have photographs of the robbers taken during the robbery and sufficient to identify them. The judge refused to suppress the identification of the defendant Boswell by the saleswoman. One has the impression of a case constructed to present an abstract rather than a practical issue. Cf. *Commonwealth* v. *Clarke*, 350 Mass. 721, 722 (1966).

Moreoever, the case is not presented in such a way as to enable us to decide finally, if the Commonwealth's appeal is successful, that the suppressed evidence will be admissible at trial. The issues of probable cause and illegal arrest are argued to us, but not the waiver issue. If trial is to be delayed by an interlocutory appeal, at least the case should be ready for a definitive decision. The possibility of continuing controversy over the same evidence could have been avoided if the prosecutor had requested the judge to make findings and rulings on all the issues relating to the suppression of the evidence.

2. *Probable cause.* It seems clear enough that, when the officers had reliably ascertained that the surveillance photographs provided a good representation of the robbers, they had probable cause to arrest the persons shown in the photographs. Accordingly, the defendants argue that "Jane Doe" warrants should have been obtained. Cf. *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168 (1974) ("Jane Doe" search warrant); *United States* v. *Jarvis*, 560 F.2d 494, 497 (2d Cir. 1977) (description required in "John Doe" arrest

warrant). But there was no probable cause to arrest persons named Toney and Boswell or to search for such persons in any particular place, and such warrants would not have authorized such arrests or searches. See *Rice* v. *Wolff,* 513 F.2d 1280, 1291-1292 (8th Cir. 1975), rev'd on other grounds sub nom. *Stone* v. *Powell,* 428 U.S. 465 (1976). Insistence on a "Jane Doe" warrant in these circumstances would in no way contribute to the "right of the people to be secure in their persons, houses, papers and effects," embodied in the Fourth Amendment to the Constitution of the United States.

The anonymous telephone tip added little to probable cause. The coincidence of the first names of Cassandra Alexander and Cassandra Kincaid was suggestive, but even if the police could be credited with the knowledge of the postal inspector, there was cause for investigation of the names and addresses given in the tip rather than for arrest or search. Until the tip was further corroborated, it was not clear either that the informant was trustworthy or that his information was reliable. See *Commonwealth* v. *Anderson,* 366 Mass. 394, 397-398 (1974), and cases cited.

Thus probable cause to arrest Toney or Boswell or to search for them at the addresses given in the tip was not clear before the police reliably identified Toney as one of the robbers shown in the surveillance photographs. Before then, even if an arrest warrant could have been obtained, entry into a dwelling under the warrant might have been improper. But when Toney was identified as one of the photographed robbers, probable cause to arrest her was complete.

We think the identification of Toney at her door also provided probable cause to arrest Boswell. At that point the tip had been corroborated in vital particulars. See *United States* v. *Sullivan,* 321 F. Supp. 597, 599 (S.D.N.Y. 1971). The informant had previously demonstrated familiarity with the circumstances of the robbery, and the corroboration supported both his trustworthiness and the reliability of his information. Cf. *Commonwealth* v. *Stevens,* 362 Mass. 24,

27-28 (1972). See *Commonwealth* v. *Avery,* 365 Mass. 59, 63-64 (1974). Thus even on Boswell's testimony that an officer first saw her after he had entered her apartment, probable cause was complete before the entry.

3. *The Forde rule.* In *Commonwealth* v. *Forde,* 367 Mass. 798, 806 (1975), three Justices of this court held that notwithstanding the existence of probable cause, "the Fourth Amendment prohibits a warrantless entry into a · dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant." For present purposes we accept that holding and do not consider whether subsequent decisions of the United States Supreme Court may have undermined its basis. See *Commonwealth* v. *LeBlanc,* 373 Mass. 478, 485 n.2 (1977). The Forde holding does not imply that police must make an arrest as soon as probable cause arises, or that a warrant must be obtained at that stage of the investigation. But "where the exigency is reasonably foreseeable and the police offer no justifiable excuse for their prior delay in obtaining a warrant, the exigency exception to the warrant requirement is not open to them." 367 Mass. at 803.

Entry into the hallway of Toney's apartment building was not an entry into a dwelling for the purposes of the Forde rule. Where a common area in an apartment building is open so that anyone can enter it, a tenant's expectation of privacy is limited by the fact that others must use the area. He therefore cannot complain if a policeman stationed there overhears a conversation in the tenant's apartment. *Commonwealth* v. *Hall,* 366 Mass. 790, 794 (1975). *Commonwealth* v. *Dinnall,* 366 Mass. 165, 167 (1974). We think it follows that there was no invasion of the defendant Toney's expectation of privacy in a knock on the door of her apartment or in a view of her as she stood in the doorway. Cf. *United States* v. *Santana,* 427 U.S. 38, 42 (1976) (threshold of house).

Instead of knocking on the door of Toney's apartment, the police could have surrounded the apartment house and waited for her to emerge. But the Constitution does not

thus limit the police in their choice of investigatory methods. A "stakeout," perhaps for a lengthy period, might be more rather than less intrusive than an approach to the suspect's door. An innocent suspect might well prefer to have the matter cleared up. There is no evidence that the police were disorderly or threatening, or that they demanded or forced entry into the apartment before they recognized Toney.

When the police recognized Toney, there was probable cause to arrest her, and she was arrested in her dwelling. We next consider the application of the Forde rule to this situation.

4. *Justifiable excuse: Toney.* There is no doubt that there were exigent circumstances requiring immediate arrest once the investigating officer recognized Toney in her doorway. Armed robbery with a shotgun is a crime of violence, and there was danger that the suspect might be armed. Probable cause to arrest was clear. The suspect was unquestionably in the building, and might well escape if not restrained. The entry was peaceable and was made in the daylight at 9 A.M. Thus the Forde standards were fully met. 367 Mass. at 807. Cf. *United States* v. *Santana,* 427 U.S. 38, 44-45 (1976) (Stevens, J., concurring).

But the exigency was reasonably foreseeable, and indeed was undoubtedly foreseen by the police. Thus the question remains whether they had a justifiable excuse for their prior delay in obtaining a warrant. See *id.* at 48-49 (Marshall, J., dissenting). We think such an excuse is found in the fact that Toney's true identity was not known until the moment of her arrest. *United States* v. *St. Clair,* 240 F. Supp. 338, 341 (S.D.N.Y. 1965). Until then the police did not have a firm basis for entry into her apartment, whether or not they obtained either an arrest warrant or a search warrant. *United States* v. *Sullivan,* 321 F. Supp. 597, 599 (S.D.N.Y. 1971). At least when probable cause is in doubt, the Forde rule does not prevent the police from knocking on the door of a dwelling in the hope that a suspect will answer the door. Nor does it prevent them from arresting the suspect in the

dwelling upon probable cause and exigent circumstances even though the exigency is foreseeable.

5. *Justifiable excuse: Boswell.* The situation of Boswell was much like that of Toney. Probable cause to arrest was complete before the entry into Boswell's apartment. The Forde standards as to exigency were met, but the exigency was foreseeable and no doubt foreseen. The failure to obtain a warrant before the arrest of Toney is justified equally as to Boswell. The failure to obtain a warrant for the arrest of Boswell after Toney had been arrested is excused because of the danger that Boswell, if not apprehended immediately, might learn of Toney's arrest and take flight.

*Orders reversed.*