COMMONWEALTH vs. PAUL L. CADORET & another.[1]

Suffolk.   October 5, 1982. — February 10, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Search and Seizure*, Private club, Expectation of privacy.

Defendants in a criminal case had a reasonable expectation of privacy in
   the social club which they operated that foreclosed the Commonwealth
   from introducing evidence obtained in a police officer's warrantless
   search of the premises where limitations on admittance to the club were
   enforced; where the police officer was unable to see criminal activity
   from the entrance area, at which he was expressly denied admission
   without a warrant; and where there was no apparent breach of the
   peace or exigent circumstance justifying the officer's entering the prem-
   ises.  [150-152]

COMPLAINTS received and sworn to in the Boston Munici-
pal Court Department on July 6, 1981.

Motions to suppress evidence were heard by *Burnham*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Muriel Ann Finnegan*, Assistant District Attorney, for the
Commonwealth.

*John P. Ward* for the defendants.

WILKINS, J.  The Commonwealth appeals from the allow-
ance of the defendants' motion to suppress evidence obtained
in a warrantless search of a social club that they operate. We
transferred the appeal here on our own motion and now af-
firm the order allowing the motion to suppress.

We summarize the motion judge's findings of fact.  The
defendant D'Onofrio is the treasurer, and the defendant
Cadoret is a member of the board of directors, of The Loft

---

[1] Joseph D'Onofrio.

Twenty-One Association, Inc. (The Loft), a nonprofit corporation that operates the club on Stanhope Street in Boston. The defendants operate the club, in effect, as its managers. The club's members pay an annual fee for access to its facilities. On paying a $5 fee, each member may bring one guest at each visit. The Loft operates between 1 A.M. and 5 A.M., when members may socialize, dance, and purchase soft drinks. The Loft does not have a victualler's license. The Loft premises are on the second floor of the building; the defendants live on the third floor. Typically, when the club is open, members and guests "check in" at the second floor landing, where D'Onofrio monitors a sign-in sheet and membership list.

On July 5, 1981, a Sunday, Detective John J. Mulligan, a member of the Boston police department's vice control unit, visited The Loft, as he had every weekend in recent months. He had no search warrant. He knew that The Loft did not have a liquor license, a victualler's license, or a license permitting entertainment on a Sunday. At the second floor landing, D'Onofrio told Detective Mulligan that, if he did not have a warrant, he did not have permission to search. Detective Mulligan nevertheless inspected the second and third floors. On the second floor he saw some people dancing to recorded music. On the third floor, he saw food, arranged buffet style, but no indication that it was being offered for sale. In the dimly lit room he saw individuals sitting alone, as well as couples, some in sexual embraces.

On July 6, 1981, Detective Mulligan sought complaints against the defendants, charging them with being unlicensed common victuallers, operating an unlicensed Sunday dance, and keeping a house of ill fame.

In this appeal, the Commonwealth argues that Detective Mulligan was lawfully on the premises, that he did not need a search warrant, and that what he observed, leading to the complaints, was in plain view. There is no claim that he was justified in entering the premises because of some exigent circumstance. Detective Mulligan testified that he did not pay a $5 fee on his entry into The Loft, and the Commonwealth has argued the case on that assumption.

The judge concluded that the search violated the defendants' privacy rights. The issue is whether the defendants, as a matter of law, had a reasonable expectation of privacy in the circumstances.

The judge's findings of fact must stand unless they are clearly erroneous. *Commonwealth* v. *Accaputo*, 380 Mass. 435, 448 n.18 (1980). In this respect, the judge's finding that the defendants had an expectation of privacy is on a question of fact (*Commonwealth* v. *Mahnke*, 368 Mass. 662, 690, cert. denied, 425 U.S. 959 [1975]), and is supported by the evidence. The question whether that expectation was reasonable in the circumstances calls for an ultimate legal conclusion, one subject to our review. The question is whether the defendants' expectation of privacy "is one which society could recognize as reasonable." *Commonwealth* v. *Podgurski*, 386 Mass. 385, 388 (1982). See *Smith* v. *Maryland*, 442 U.S. 735, 739-740 (1979); *Rakas* v. *Illinois*, 439 U.S. 128, 143-144 n.12 (1978); *Katz* v. *United States*, 389 U.S. 347, 351-352 (1967), and *id.* at 361 (Harlan, J., concurring). Although the status of premises as public or private property is not controlling (see *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742 [1981]; *Commonwealth* v. *Simmons*, 383 Mass. 46, 54 [1981]), the place involved may have a bearing on whether a person had a reasonable expectation of privacy. *Commonwealth* v. *Ortiz*, 376 Mass. 349, 351 (1978). Other relevant factors include the extent to which the premises were freely accessible to persons other than the defendant and whether the defendant controlled access to the area. *Sullivan* v. *District Court of Hampshire, supra. Commonwealth* v. *Hall*, 366 Mass. 790, 795 (1975). *Commonwealth* v. *Dinnall*, 366 Mass. 165, 167 (1974). *Commonwealth* v. *Thomas*, 358 Mass. 771, 774 (1971).

The Commonwealth argues that it met its burden (see *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 [1974]) of showing the absence of any reasonable expectation of privacy because The Loft was a public place. It is true that police officers may accept a general public invitation to enter

commercial premises, and while there, even if for unofficial purposes, they may take note of anything in plain view.[2]

However, Fourth Amendment protection from unreasonable searches and seizures extends to commercial premises (see *G. M. Leasing Corp.* v. *United States,* 429 U.S. 338, 353 [1977]; *See* v. *Seattle,* 387 U.S. 541, 543 [1967]), and the rule that warrantless searches without consent are generally unreasonable applies to commercial premises as well as to houses. *Marshall* v. *Barlow's, Inc.,* 436 U.S. 307, 311-312 (1978). *Commonwealth* v. *Accaputo,* 380 Mass. 435, 438 (1980). Even if commercial premises are open to the public, the proprietor does not thereby consent "to wholesale searches and seizures that do not conform to Fourth Amendment guarantees." *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 329 (1979).

The fact that premises are maintained as a club with a membership policy is not conclusive in favor of the club. Failure to enforce limitations on admittance would warrant the conclusion that the persons operating the club had no reasonable expectation of privacy. See *Ouimette* v. *Howard,* 468 F.2d 1363, 1364-1365 (1st Cir. 1972); *Commonwealth* v. *Weimer,* 262 Pa. Super. 69, 75-76 (1978). If, however, there is an enforced admission charge, if the police are expressly denied admission without a search warrant, if

---

[2] See *Commonwealth* v. *Laudate,* 345 Mass. 169, 171 (1962), petition dismissed, 372 U.S. 951 (1963) (warrantless entry by police into shoe shine parlor and smoke shop lawful, and search warrant was properly based on observations made by them while inside); *Commonwealth* v. *Baldwin,* 11 Mass. App. Ct. 386, 390-391 (1981) (defendant had no expectation of privacy that made it unlawful for police to examine vehicle identification number visible through windshield of automobile parked on used car lot); *Commonwealth* v. *Monteririo,* 4 Mass. App. Ct. 349, 350 (1976) (defendant had no expectation of privacy as to a shelf under a public telephone in a public lounge, thus warrantless seizure of heroin found there was lawful); *United States* v. *Berrett,* 513 F.2d 154, 156 (1st Cir. 1975) (where agents entered open garage without a warrant and saw stolen calculators, and returned with a warrant, the warrant was not based on an unlawful search); *United States* v. *Berkowitz,* 429 F.2d 921, 925 (1st Cir. 1970) (not an unlawful search for police, without a warrant, to enter a shoe store open to the public and to observe what was not concealed from view); 1 W. LaFave, Search and Seizure § 2.4, at 338-340 (1978).

the police see no criminal activity from the entrance area, and if there is no apparent breach of the peace or exigent circumstance, the proprietors of a club have a reasonable expectation of privacy that forecloses the Commonwealth from introducing evidence seized in a warrantless search of the premises. See *Wheeler* v. *Goodman*, 330 F. Supp. 1356, 1367-1368 (W.D.N.C. 1971). The defendants' expectation of privacy was reasonable. The Commonwealth did not show that Detective Mulligan saw any illegal activity while standing at the second floor landing at which he was told that he did not have permission to search. We need not consider any distinction between the second and third floors of the premises.[3]

*Order allowing motion to*
*suppress affirmed.*

---

[3] We note that the record suggests that the police had probable cause to obtain a search warrant prior to the warrantless entry.