COMMONWEALTH *vs.* JOSEPH D'ONOFRIO
(and companion cases[1]).

Suffolk. October 9, 1985. — February 11, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Search and Seizure,* Affidavit, Expectation of privacy, Private club.

The judge hearing a motion to suppress evidence in a criminal case erred in
   ruling that affidavits for a search warrant based on observations made
   by police officers on the premises of a social club were defective because
   the affidavits did not affirmatively show that the officers were on the
   premises lawfully. [712-713]

At the hearing of a motion to suppress evidence made by two defendants
   charged with various offenses arising from their operation of a social
   club, the evidence did not warrant a conclusion that the defendants had
   a reasonable expectation of privacy on the premises of the club, where
   it appeared that, although the club ostensibly had a policy of restricting
   admission to members and their guests, the defendants did not make
   reasonable efforts to corroborate the claims of guest status made by
   persons seeking admission to the club. [714-718]

COMPLAINTS received and sworn to in the Boston Municipal
Court Department on April 11, 1983.

On appeal to the jury session of that court, a motion to
suppress evidence was heard by *Charles M. Grabau, J.*

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Michael J. Traft,* Assistant District Attorney, for the Com-
monwealth.

*Edward J. Sweeney, III (William R. Marino* with him) for
the defendants.

O'CONNOR, J. The defendants are charged in numerous com-
plaints with exposing and keeping alcoholic beverages for sale
without authority, retailing soft drinks without a license, operat-
ing a place of assembly which exceeds the occupancy limit,

---

[1] The other defendant is Paul Cadoret.

and managing unlicensed Sunday dances.[2] This is an interlocu-tory appeal by the Commonwealth from an order of a judge of the Boston Municipal Court Department suppressing evi-dence obtained as a result of the execution of two search war-rants. Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (1979). We transferred the appeal to this court on our own motion and now vacate the suppression order and remand the cases for further proceedings.

The judge ordered the evidence suppressed after conducting an evidentiary hearing on the defendants' motion to suppress. In a written memorandum of findings and rulings, the judge stated that the search warrants were based on two affidavits, each of which contained the following introductory recitation: "As a result of a complaint received by the Vice Control Section relative to illegal activities being conducted at the 'Loft' which is located at 21 Stanhope St., Boston, Mass., an investigation was ordered by Lieutenant Edward J. McNelley of the Vice Control Section relative to these alleged activities, which inves-tigation commenced on March 19, 1983, with an undercover police operation." The judge's memorandum then states that following that introductory recitation the affidavits set forth detailed observations made at The Loft by two undercover police officers on four different occasions.[3]

The judge reasoned that affidavits in support of search war-rants "must stand or fall solely on their contents," and that the two affidavits in this case were insufficient to support the issuance of search warrants because they failed to provide sufficient information about the complaint or the source of the complaint to which reference was made in the introductory recitation, and which prompted Lieutenant McNelley's deci-sion to conduct an undercover investigation at The Loft. The

[2] This court and the Appeals Court have previously considered the lawful-ness of earlier searches conducted at the same premises. See *Commonwealth* v. *Cadoret,* 388 Mass. 148 (1983); *Commonwealth* v. *Cadoret,* 15 Mass. App. Ct. 654 (1983).

[3] The evidence at the suppression hearing indicated that two officers made observations at The Loft, but the affidavits referred only to observations made by Officer Daniel Dovidio.

judge "analogize[d] the single 'complaint' to an anonymous informant's tip which on its face is conclusional," and concluded that the complaint did "not provide the officers with a sufficient basis with which to enter the 'Loft' under the so-called 'exigent circumstances' exception." The officer's observations, the judge ruled, "[did] not save the warrants." We interpret the judge's rationale to have been that, in the absence of material in the affidavits demonstrating the reliability of the complainant and the complaint, the police officers were not shown to have been rightfully at The Loft when they made the observations set forth in the affidavits, and that the lack of that showing was fatal to the affidavits and the resulting search warrants. However, neither this court, nor any other appellate court of which we are aware, has ever required an affidavit that sets forth a police officer's personal observations in support of a search warrant to contain information showing that the officer made those observations without violating the defendant's rights guaranteed by the Fourth Amendment. We are unwilling to impose such a requirement.

Our determination that the judge was in error in ruling that the affidavits were defective because they did not demonstrate that the officer's observations were made lawfully does not end our inquiry. Even though there is no requirement that the affidavits themselves demonstrate that Officer Dovidio's observations were lawful, if, as a matter of fact, the observations resulted from a violation of the defendants' Fourth Amendment rights, the observations cannot support the issuance of search warrants, and any evidence traceable to those observations must be suppressed. See *Maryland* v. *Macon,* 472 U.S. 463, 467-468 (1985); *Commonwealth* v. *Hall,* 366 Mass. 790, 792 (1975); *Commonwealth* v. *Dinnall,* 366 Mass. 165, 167 (1974); *Commonwealth* v. *Laudate,* 345 Mass. 169, 171 (1962). Therefore, the question whether the officer's observations, which are critical to the affidavits, resulted from an intrusion on the defendants' Fourth Amendment rights must be answered.[4]

---

[4] The defendants' argument is limited to the Fourth Amendment to the United States Constitution. No separate State constitutional argument has been advanced.

The judge did not make detailed findings concerning the circumstances of the police observations at The Loft. This ordinarily would require our remanding the case to the trial court for further proceedings. In this case, however, remand is unnecessary because the evidence introduced at the suppression hearing would not have warranted a conclusion that the officer's observations set forth in the affidavits supporting the search warrants were unlawfully made.

It is undisputed that when Dovidio made the relevant observations he was inside The Loft without the benefit of a search warrant. The Commonwealth does not contend that Dovidio's presence there was justified by probable cause and exigent circumstances. Instead, the Commonwealth's position is that when Dovidio entered The Loft the defendants had no reasonable expectation of privacy there, and that while Dovidio was located where he had a right to be he observed the items in plain view described in the affidavits.

Whether or not Dovidio's observations resulted from a violation of the defendants' Fourth Amendment rights depends on whether Dovidio intruded on the defendants' reasonable expectation of privacy. *Commonwealth* v. *Cadoret,* 388 Mass. 148, 150 (1983). *Commonwealth* v. *Simmons,* 383 Mass. 46, 54 (1981). The inquiry is twofold: (1) Did the defendants subjectively expect privacy at The Loft? (2) If so, was their expectation objectively reasonable? *Oliver* v. *United States,* 466 U.S. 170, 177 (1984). *Commonwealth* v. *Simmons,* 392 Mass. 45, 48 (1984). *Commonwealth* v. *Podgurski,* 386 Mass. 385, 388 (1982). Unless the defendants had a reasonable expectation of privacy at The Loft when the officer made observations there, there was no "search" within the meaning of the Fourth Amendment, *Maryland* v. *Macon, supra* at 470-471; *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741 (1981), and therefore there was no violation of the defendants' Fourth Amendment rights.

Although the burden of establishing that a warrantless search is reasonable, and therefore lawful, is on the Commonwealth, *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974), the burden with respect to the threshold question whether a

search in the Fourth Amendment sense occurred at all is on a defendant. To establish a violation of rights secured by the Fourth Amendment, the defendants must prove that the officer obtained the information central to the affidavits by invading their reasonable expectation of privacy. *Rawlings* v. *Kentucky,* 448 U.S. 98, 104-105 (1980). *United States* v. *Hershenow,* 680 F.2d 847, 855 (1st Cir. 1982).[5] Because the defendants have that burden, they are entitled to an order remanding this case for findings on the Fourth Amendment issue only if the evidence before the motion judge would have warranted a conclusion favorable to them. Accordingly, we set forth the evidence at the suppression hearing that was most favorable to the defendants.

The Loft Twenty-One Association, Inc., is a fraternal organization, structured as a nonprofit corporation, that operates an after-hours club, called The Loft, in a building at 21 Stanhope Street in Boston. The defendants are officers of the corporation and central figures in the management of the club. Individuals seeking membership are required to complete applications and to pay a membership fee. In addition, members are required to pay a cover charge of $5 and sign a sign-in sheet on each occasion they enter the premises. The sign-in sheets contain the following statements: "By signing this sheet of the Loft Twenty-One Association I represent that I am a member . . . or a guest of a member, I hereby acknowledge truthfully and honestly that I am not a member of nor working for the police department or any other law enforcement agency. I have no objection to observing or being asked to participate in same sex dancing or other private expressions of same sex affection or eroticism; I endorse private consensual adult homosexual activity. Only members or guests who have signed the above

---

[5] In *Commonwealth* v. *Cadoret,* 388 Mass. at 150, we said: "The Commonwealth argues that it met its burden (see *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 [1974]) of showing the absence of any reasonable expectation of privacy because The Loft was a public place." In *Cadoret* the posture of the burden of proof was not in issue, and our statement was not intended to be an endorsement of the Commonwealth's conclusion regarding the burden of proof being on the Commonwealth.

statement will be permitted to enter the club facilities." The Loft's policy is to admit members and guests of members. Guests of members, like members, are required to pay cover charges and to sign the sign-in sheets. Club personnel, stationed near the entrance to the premises, are instructed to check membership cards and to check whether nonmembers are actually guests of members.

On March 20, 1983, in the early morning, the defendant D'Onofrio was checking persons entering the premises. He allowed a group of four people to enter the club. One of the four was a member. Officer Dovidio was the last person in that group and he told D'Onofrio that he was a guest of Robert Sterling, who was a member known to D'Onofrio. Dovidio, attired in casual clothes, paid the $5 cover charge and signed a false name to the sign-in sheet. On March 27, 1983, Dovidio, again in civilian attire, paid the cover charge, told D'Onofrio that he was a guest of a member, signed the sign-in sheet, and entered. On this occasion, according to D'Onofrio's testimony, "there were other people lined up, and there wasn't time to adequately ask everybody who they were with. [D'Onofrio] just asked them to sign their names. If they were recognized by [him, he] didn't ask any further questions. . . . Mr. Dovidio, having been in the prior week, [D'Onofrio] knew to be a guest of a member." According to the testimony, Dovidio entered the premises early in the morning on April 3 and April 10, 1983, under conditions similar to those of his earlier visits. On April 10, 1983, Dovidio was evicted from The Loft on the ground that he was neither a member nor a guest of a member. Within a few minutes thereafter, several members of the Boston police department entered the premises to execute the search warrants which are the subject of this dispute.

To establish a reasonable expectation of privacy, it is not enough for the defendants to show that they had an unenforced "policy" of restricting access to The Loft to members and guests of members. In *Commonwealth* v. *Simmons,* 392 Mass. 45, 50 (1984), we noted the relevancy to "the expectation of privacy calculus" of "whether the defendant 'took normal precautions to maintain his privacy — that is, precautions cus-

tomarily taken by those seeking privacy.' *Rakas* v. *Illinois,* [439 U.S. 128, 152 (1978) (Powell, J., concurring)]." We said in *Commonwealth v. Cadoret,* 388 Mass. at 151, that "[f]ailure to enforce limitations on admittance would warrant the conclusion that the persons operating the club had no reasonable expectation of privacy." That conclusion is required in the absence of reasonable enforcement efforts. See *Commonwealth* v. *Weimer,* 262 Pa. Super. 69, 72, 75-76 (1978) (Police officers gained entrance to a private club in which admission was theoretically restricted to members. There was one entrance and it was through a locked door activated by a buzzer system. The door contained a one-way mirror. The officers, not in uniform, gained entrance simply by pressing the doorbell. The court held that the "lax enforcement of purported security measures indicate[d] that appellees' expectation of privacy was hardly reasonable or justifiable").

We have set forth all the evidence at the suppression hearing having a tendency to show enforcement of the admissions policy at The Loft. In the absence of evidence that the defendants made reasonable efforts to corroborate the claims of guest status made by persons seeking admission to the club, the evidence fails to show that the public was not freely admitted there. If the public was freely admitted, the defendants did not have a reasonable expectation of privacy, and Officer Dovidio's entrance into the club and observations of things in plain view did not violate the defendants' Fourth Amendment rights. As we have said before, "police officers may accept a general public invitation to enter commercial premises, and while there . . . they may take note of anything in plain view." *Commonwealth* v. *Cadoret,* 388 Mass. at 150-151. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz* v. *United States,* 389 U.S. 347, 351 (1967).

Even if the evidence would have warranted a finding that a policy of excluding police officers, but not the public, was enforced, that would not have established an expectation of privacy that is reasonable, and therefore protected, under the Fourth Amendment. "The test of [reasonableness] is not whether

the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Oliver* v. *United States, supra* at 182-183. The Fourth Amendment was not designed to protect persons from police presence in areas open to the general public, and the fact, which could be found on the evidence, that Officer Dovidio falsely denied that he was a police officer is of no consequence. "[T]he Government is entitled to use decoys and to conceal the identity of its agents." *Lewis* v. *United States,* 385 U.S. 206, 209 (1966). *Commonwealth* v. *Miller,* 361 Mass. 644, 655 (1972).

The evidence also would have warranted a finding that Dovidio misrepresented that he was a guest of a member of the club. That misrepresentation, too, is without consequence in view of the insufficiency of the evidence to show reasonable enforcement of a policy to exclude persons other than members and their guests. The defendants' position is not advanced by viewing Dovidio as a trespasser by reason of having gained entrance to the club by misrepresentation. "The fact that the [officer] may have committed a technical trespass does not create a Fourth Amendment violation when no expectation of privacy exists. As the United States Supreme Court has noted on several occasions, 'the Fourth Amendment protects people, not places . . . . [t]he premise that property interests control the right of the Government to search and seize has been discredited.' *Katz* v. *United States,* 389 U.S. 347, 351-353 (1967), and cases cited." *Commonwealth* v. *Simmons,* 392 Mass. 45, 49 (1984).

In summary, there is no requirement that search warrant affidavits containing the observations of police officers establish that the observations were made without infringement on Fourth Amendment rights. However, evidence obtained by the execution of search warrants issued on the basis of affidavits setting forth observations made as a result of an unlawful search must be suppressed on a proper motion. The burden of proving that a search was made, in the Fourth Amendment sense, is on the defendant. The evidence at the suppression

hearing in these cases was insufficient to warrant a finding that a search was made. Therefore, the judge erred in allowing the motion to suppress. Accordingly, the order allowing the motion to suppress is vacated and the cases are remanded for further proceedings, including the entry of an order denying the motion to suppress.

*So ordered.*