COMMONWEALTH *vs.* RUSSELL C. SERBAGI, SR.
(and a companion case[1]).

Essex. October 15, 1986. — October 28, 1986.

Present: GRANT, KASS, & WARNER, JJ.

*Search and Seizure,* Expectation of privacy.

At the hearing on motions to suppress evidence brought by two defendants charged with unlawful possession of narcotics, the evidence did not warrant a conclusion that the defendants had a reasonable expectation of privacy in a grassy common area from which a police officer, through the window of a condominium unit owned by one of the defendants, had observed that defendant seated at a desk and forming lines of cocaine on a small mirror. [61-63]

COMPLAINTS received and sworn to in the Lawrence Division of the District Court Department on December 26, 1984.

Motions to suppress evidence were heard by *Salvatore J. Basile, J.*

*Paul Allen Epstein,* Assistant District Attorney (*Edward F. Connelly,* Special Assistant District Attorney, with him) for the Commonwealth.

*Herbert F. Travers, III* (*Albert L. Farrah, Jr.,* with him) for the defendants.

GRANT, J. These are District Court complaints issued under G. L. c. 94C, § 34. The complaint against Russell C. Serbagi, Sr. (Senior), charges him with unlawful possession of cocaine. The complaint against Russell C. Serbagi, Jr. (Junior), charges him with unlawful possession of marihuana as well as cocaine. Both substances were seized by the Andover police following a warrantless entry into Senior's apartment. Each defendant filed a motion to suppress the substance(s) taken from him, as

---

[1] Commonwealth *vs.* Russell C. Serbagi, Jr.

well as other evidence seized, claiming violations of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.[2] Both motions were allowed, and the Commonwealth appealed. G. L. c. 278, § 28E, as appearing in St. 1979, c. 344, § 45. Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979).

The following is a summary of the relevant evidence introduced at the hearing on the motions.[3] At approximately 11:30 P.M. on Christmas Eve, 1984, Officer Pathiakis of the Andover police, while assigned to cruiser patrol, received a radio transmission from his dispatcher concerning a loud party in apartment 105 of the Balmoral Apartments, which are located on the northeast corner of Balmoral and North Main streets in Andover. The building in question formerly belonged to a parochial school and has since been converted to individual apartments which have been sold as separate condominium units subject to the provisions of G. L. c. 183A. The unit purchased by Senior is numbered 106, is located in the southwest corner of the ground floor of the building, and can be entered not only from the interior of the building but also through an exterior doorway located in the south elevation of the building, approximately fifty feet from the southwest corner of the building and twenty feet from the public sidewalk on Balmoral Street. Apartment 105 adjoins 106 on the latter's east side and also faces Balmoral Street; it can only be reached from the interior of the building after one has passed through the main entrance to the building, which is on the east side of North Main Street.

---

[2] The defendants do not contend that their rights under art. 14 are any greater than their rights under the Fourth Amendment. See *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978); *Commonwealth* v. *Simmons,* 392 Mass. 45, 51, cert. denied, 469 U.S. 861 (1984). Compare *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741 n.7 (1981); *Commonwealth* v. *Chappee,* 397 Mass. 508, 512 n.1 (1986).

[3] We omit some of the evidence on the questions of (1) probable cause to believe that cocaine would be found in Senior's apartment and (2) exigent circumstances which would excuse the necessity for a warrant. The motion judge's findings on those questions were adverse to the defendants and are not challenged in this court. See *Sullivan* v. *District Court of Hampshire,* 384 Mass. at 742-744.

Pathiakis had been told that 105 faced Balmoral Street but did not know where the entrance to that apartment was. When he parked his cruiser on that street, he observed Junior and two other people engaged in conversation on the steps of the exterior entrance to Senior's apartment. Pathiakis proceeded over a paved walkway which led from the public sidewalk to the entrance and requested directions to 105. Junior pointed in the direction of the southwest corner of the building and indicated that Pathiakis would have to go around to the main entrance on North Main Street and push a buzzer in order to gain access to 105. The area between the entrance to 106 and the corner of the building was a common area (G. L. c. 183A, § 1[5]) in which, according to the master deed of the condominium (G. L. c. 183A, §§ 1 and 8[*e*]), Senior had an undivided 1.671 percent interest (G. L. c. 183A, § 5[*a*]). The area was grassed.

Pathiakis decided to take a shortcut across the common area rather than return to the sidewalk on Balmoral Street and proceed from there to the sidewalk on North Main Street and so on to the main entrance to the building. He was aware that in following his intended route he would be crossing private property. He left the entrance to Senior's apartment and proceeded over the grass, approximately a foot or a foot and a half from the side of the building. The second window which Pathiakis encountered (on his right) was four or five feet wide; its bottom was approximately three and one-half feet from the ground, and it extended upward for another nine feet. The window was located in the exterior wall of the living room of Senior's apartment; it was equipped with drapes which had not been drawn. The room was well lighted.

Something (it may have been "movements, music [or] people") attracted Pathiakis's attention and caused him to turn his head to his right. When he did so, he saw six or seven people clustered around a desk which was located some ten feet from the window. They were watching Senior, who was seated at the desk forming lines of cocaine on a small mirror. Pathiakis immediately backed away, flattened himself against the side of the building, and radioed for backup assistance.

When he next looked in the direction of the window, he noticed that the drapes had been drawn. When he looked back in the direction of the entrance to Senior's apartment, he noticed that Junior was no longer in sight.

When two backup officers arrived in a second cruiser, Pathiakis advised them of what he had seen through the window. The three officers entered the apartment, without a warrant, through the unlocked exterior door. Pathiakis entered the living room. One of the other officers came upon Junior in a bedroom, where he was attempting to secrete the mirror, on which there was a residue of cocaine. Junior was placed under arrest for unlawful possession of cocaine. A search of his person yielded a quantity of marihuana.[4] Pathiakis then placed Senior under arrest for unlawful possession of cocaine.

As the defendants have acquiesced in the motion judge's findings on the questions of probable cause and exigent circumstances (note 3, *supra*), the only question for decision is whether Senior had a reasonable expectation of privacy in the place where Pathiakis was standing when he observed Senior forming lines of cocaine. *Commonwealth* v. *D'Onofrio,* 396 Mass. 711, 714 (1986). That question is primarily one of fact (*Commonwealth* v. *Cadoret,* 388 Mass. 148, 150 [1983]), one on which the defendants had the burden of proof. *Commonwealth* v. *D'Onofrio,* 396 Mass. at 715. *Commonwealth* v. *Chappee,* 397 Mass. 508, 512 (1986). *Commonwealth* v. *Royce,* 20 Mass. App. Ct. 221, 224-225 (1985).[5] "The question whether [any] expectation [of privacy] was reasonable in the circumstances calls for an ultimate legal conclusion . . . [which is] subject to [appellate] review." *Commonwealth* v. *Cadoret,* 388 Mass. at 150.

The judge's findings on this question are sparse. He found that it would have been virtually impossible for an officer standing on the sidewalk on Balmoral Street to see what Senior

---

[4] Junior does not complain of his arrest or the search of his person if the original entry of the officers was lawful.

[5] The *Royce* case was decided approximately three months prior to the judge's decision in this case.

was doing with his hands while seated at the desk. The judge referred to shrubbery in the common area which, for all that appears, would not have blocked anyone's view from any vantage point.[6] He paid no heed to his own finding that the living room drapes had not been drawn. See *Commonwealth* v. *Simmons,* 392 Mass. 45, 50-51, cert. denied, 469 U.S. 861 (1984). He found that Pathiakis "had no invitation to use the lawn and no license to pass [over] it." He took note of Senior's 1.671 percent interest in the common area, although he conceded that any expectation of privacy which Senior had by reason of that interest might have been "diluted" by reason of the aggregate (98.329 percent) of the undivided interests in the common area held by the other unit owners in the condominium. Nowhere did the judge address the question whether Senior had a *reasonable* expectation of privacy in the place where Pathiakas was standing when he made his observations.

The evidence at the suppression hearing was silent on the presence or absence of any "No Trespassing" signs in or bordering on the common area, as well as on the presence or absence of any physical obstacle to Pathiakis's entering or crossing the area. Compare *Commonwealth* v. *Simmons,* 383 Mass. 46, 55 n.4 (1981), *S.C.,* 392 Mass. at 47, 48-49, 50. The judge's finding that Pathiakis had no invitation or license to pass over the area does not advance the analysis because "[t]he fact that the officers may have committed a technical trespass does not create a Fourth Amendment violation when no expectation of privacy exists." *Commonwealth* v. *Simmons,* 392 Mass. at 49. *Commonwealth* v. *D'Onofrio,* 396 Mass. at 718. That finding is merely illustrative of the judge's undue emphasis on Senior's ownership interest in the common area. Such an interest is but one factor to consider in the expectation-of-

---

[6] At two different points in his memorandum of decision the judge referred to shrubbery which was located in the common area between the sidewalk and the window and which might have blocked any view into the apartment from parts of the sidewalk. There is no reference to shrubbery in the testimony at the hearing on the motions to suppress. There is a schematic drawing which was marked in evidence which depicts what may be shrubbery in parts of the common area, but the height of any shrubbery is a matter of conjecture.

privacy analysis. *Commonwealth* v. *Podgurski,* 386 Mass. 385, 392 (1982), cert. denied, 459 U.S. 1222 (1983). "Other relevant factors include whether a particular place is a common area, whether it was freely accessible to others besides the defendant, and whether the defendant controlled access to the area." *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 742 (1981). See also *Commonwealth* v. *Cadoret,* 388 Mass. at 150. The defendants offered no evidence of any by-laws or rules or regulations governing the use of common areas which might have been adopted in accordance with the provisions of G. L. c. 183A, § 11(*d*) or (*e*). All we know on this point is that no by-law, rule or regulation could have given Senior the right to exclude the other unit owners from entering or using the portion of the lawn located outside his living room window. See G. L. c. 183A, § 5(*d*).

The case resolves itself into one in which the defendants have failed to introduce evidence sufficient to warrant a finding that they had a reasonable expectation of privacy where the officer was standing when he made the observations which provided probable cause to believe that a crime was being committed inside the apartment. Compare *Commonwealth* v. *D'Onofrio,* 396 Mass. at 714, 717. The case is indistinguishable in principle from those in which it has been held that no one can have a reasonable expectation of privacy in an area to which others have equal rights to access. See, e.g., *Commonwealth* v. *Thomas,* 358 Mass. 771, 773-774 (1971) (cellar of apartment building to which all tenants had access); *Commonwealth* v. *Dinnall,* 366 Mass. 165, 166-167 (1974) (unlocked common hallway in apartment building); *Sullivan* v. *District Court of Hampshire,* 384 Mass. at 741-742 (canteen open to all hospital employees); *Commonwealth* v. *Podgurski,* 386 Mass. at 388 (observation through window of van from parking lot behind store would have been lawful); *Commonwealth* v. *Frazer,* 10 Mass. App. Ct. 429, 431-432 (1980) (alleyway between apartment buildings); *Commonwealth* v. *Myers,* 16 Mass. App. Ct. 554, 556 (1983) (parking lot shared by tenants of several apartment buildings). Contrast *Commonwealth*

v. *Hall,* 366 Mass. 790, 795 (1975) (locked hallway in apartment building under exclusive control of defendant).

*Order allowing motions to*
*suppress vacated.*