COMMONWEALTH *vs.* MICHAEL A. HAMILTON.

Middlesex.    April 23, 1987. — June 10, 1987.

Present: GREANEY, C.J., CUTTER, & KASS, JJ.

*Search and Seizure*, Exigent circumstances. *Constitutional Law*, Search and seizure.

In allowing a motion to suppress drugs and paraphernalia seized in a warrant-less search by police from a motel room occupied by the defendant, the judge correctly ruled that no exigent circumstances excused the officers' failure to obtain a warrant where the Commonwealth made no showing that the defendant was armed, that he might have fled or was aware of the officers' presence, that the destruction of the contraband was immi-nent or that it was impractical to obtain a warrant. [292-294]

The plain view doctrine was not available to justify the warrantless discovery and seizure of drugs in a motel room occupied by a criminal defendant, where police officers, lacking exigent circumstances, had ignored the requirement that they obtain a search warrant, and had no consent to enter the motel room. [294-295]

INDICTMENTS found and returned in the Superior Court De-partment on January 29, 1986.

A pretrial motion to suppress evidence was heard by *John Paul Sullivan*, J.

An application for an interlocutory appeal was allowed by *Neil L. Lynch*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Edward L. Toro*, Assistant District Attorney, for the Com-monwealth.

*Richard Zorza*, Committee for Public Counsel Services, for the defendant.

GREANEY, C.J.   A judge of the Superior Court allowed a motion to suppress drugs and drug-related items and parapher-nalia seized in a warrantless search by the Malden police from a motel room occupied by the defendant. See G. L. c. 278,

§ 28E; Mass.R.Crim.P. 15 (b) (2), 378 Mass. 884 (1979). We affirm the order.

The judge found the following facts. At approximately 1:30 A.M. on February 27, 1985, an unidentified woman made a telephone call to the Malden police department. She informed Officer Ronald Brown that her brother "had lost all of his . . . money on drugs" which he had purchased from someone in room 214 at the Embassy Motel in Malden.[1] Immediately Officer Brown and his partner, Officer Donald Cooper, went to the area and, at approximately 1:40 A.M., parked their police cruiser at a gasoline station across from the motel. They were soon joined by Sergeant Victor Ceranna, who arrived in another police cruiser.

The three officers went to the motel office and asked the night clerk to identify the occupant or occupants of room 214. The clerk responded that the room was registered to Sandra Hamilton. The clerk also reported that he had observed a male in the room and that the telephone had been "driving him crazy" throughout the night.

The officers went up the back stairway and positioned themselves where they could observe the exterior of room 214 as well as the other rooms off both sides of the hallway. Shortly thereafter, they saw a man, later identified as Michael Cronin, leave the room. Cronin walked unsteadily and appeared glassy-eyed. The officers concluded that he was under the influence of alcohol, drugs, or both. Bleeding puncture marks were observed in Cronin's left arm. Based on their collective experience, the officers concluded that the marks had been caused by needles.[2] Cronin was placed in protective custody.

---

[1] The police report on the incident sets forth the telephone conversation as follows:

"Received a call: 'Take this for what it's worth. Two assholes are dealing drugs and all kinds of shit out of the Embassy Motel, Room 214. They took my brother for all kinds of money.'"

[2] Officer Brown testified that he had had experience and training in narcotics investigation and had observed persons who had "injected themselves with needles." Brown believed that Cronin "had just used a needle."

Officer Cooper, who had worked at a Malden hospital for eight years and who "was familiar with intravenous injections, medication and such

Sergeant Ceranna knocked on the door to room 214 and announced that the police were there. After a delay and a second knock, the door was opened by the defendant.[3] The officers could see the interior of the motel room. On one bed they saw a small child. On an adjacent night stand, they observed a scale, which they recognized as an implement likely to be used in processing and selling illegal drugs, and a white powder, which they thought was either cocaine or heroin. The defendant was arrested and the room searched. Packages appearing to contain drugs and other drug-related paraphernalia were seized. In an inventory search during the booking procedure, $481 was taken from the defendant.[4]

The judge ruled that the police had probable cause to believe that narcotics and other illegal items were present in the room but that no exigent circumstances existed to excuse the lack of a warrant.[5] Relying principally on the reasoning in *Commonwealth* v. *Huffman*, 385 Mass. 122 (1982), the judge ordered suppressed the drug items and paraphernalia seized by the police.

We need not decide whether the police had probable cause because, even assuming that they did, we agree with the judge

---

drugs," was more specific: he testified that "[Cronin] had recently received an injection; and, without applying direct pressure, it was a subcutaneous blood blister which was oozing some blood . . . . There was a small trickle of blood running down the arm from the crook of the elbow."

[3] All three officers testified that Sergeant Ceranna knocked at the door and announced, in response to an inquiry from within the room asking who was there, that the Malden police were seeking entry. After the lapse of about a minute, Ceranna knocked again, and, in response to the same question, stated that the Malden police were outside. The defendant then opened the door.

[4] It was later discovered that Sandra Hamilton, the defendant's sister, and her young child had been expelled from their home. As a result, she had obtained room 214 at the motel with funds from a housing allowance furnished by the Department of Public Welfare. The defendant had been living with her for three to four days prior to his arrest on February 27, 1985.

[5] The judge also ruled that the defendant had standing to challenge the search of the motel room and the seizure of the items within. The Commonwealth does not contest that ruling. Of course, a motel room is an area protected by the Fourth Amendment. See Smith, Criminal Practice and Procedure § 159 n.5 (2d ed. 1983).

that the Commonwealth has not shown the existence of exigent circumstances which would excuse the failure of the police to obtain a warrant. "Under the exception for exigent circumstances, there must be a showing that it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict." *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). The Commonwealth bears the burden of establishing the existence of exigent circumstances. *Commonwealth* v. *Hall*, 366 Mass. 790, 801-802 (1975). *Commonwealth* v. *Donoghue*, 23 Mass. App. Ct. 103, 108 (1986). Each case turns on an analysis of its own facts, but certain considerations have generally emerged as guidelines for resolution of the question.[6]

The judge's findings that there was no indication that the defendant was armed, that he might flee, or that he was aware (until the police knocked on the door) of the officers' presence in the hallway are warranted by the evidence. See *Commonwealth* v. *Huffman*, 385 Mass. at 125. The crime was not one of violence, and it was not shown that there were possible risks to the safety of other residents of the motel if the officers should fail to act immediately. Indeed, the possibility of violence in the motel was no greater than that inherent in the surveillance which had taken place and the subsequent knock and entry by the police.

The judge also reasonably found that "there [was] no suggestion that [the defendant] had any reason to destroy the contraband." We consider speculative the Commonwealth's suggestion that any drugs or drug-related paraphernalia inside the

---

[6] In *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 700 (1979), we characterized the considerations as a "pragmatic check list of factors" and identified them as follows:

"For present purposes the factors on that list may be enumerated as follows: (1) the crime in question was one of violence and the suspect had been reported to be armed and dangerous; (2) probable cause to believe that the suspect has committed a felony and strong reason to believe the suspect is in the particular dwelling; (3) the entry has been made peaceably (preferably in the daytime); (4) a likelihood that the delay attendant upon securing a warrant would facilitate the destruction of evidence or property; (5) a likelihood that the suspect would escape if not promptly apprehended; and (6) some showing of a reasonable basis for believing that delay would subject the officers or others to physical harm . . . ."

room might have been destroyed after Cronin had received his injection. There is nothing to show that the defendant was aware of the police presence in the hallway. The suggestion falls short of the specific evidence of imminent destruction necessary to satisfy the exception to the warrant requirement for evidence that is about to be destroyed. See *Commonwealth v. Huffman*, 385 Mass. at 125-126. See also *Commonwealth v. Forde*, 367 Mass. at 801 (overheard telephone conversation in which accomplice attempted to warn search targets). Compare *United States* v. *Davis*, 461 F.2d 1026, 1031 (3d Cir. 1972) (warning by informant to hurry).

Nothing was proved to show that there would have been any unusual difficulty in preventing access to the premises while a warrant was obtained, and there was no evidence that it would have been impractical to obtain a nighttime warrant.[7] On the facts found by the judge, it appears that the three officers located in the corridor could have kept watch while a warrant was sought. If something unusual occurred in the interim, it might have provided an exigency justifying immediate entry.

The Commonwealth argues that the police were entitled to seize the drugs and other materials because, once the door was opened, they were able to see some likely contraband from the hallway, where they had a right to be. In the Commonwealth's opinion, "[t]he discovery and seizure of the drugs and paraphernalia . . . fall within the 'plain view' doctrine and should not be suppressed." The Commonwealth does not contend that the defendant consented to the entry, a point apparently abandoned because it was not raised below and, as a result, was not considered by the judge.

The difficulty with the argument lies in the facts that the police lacked exigent circumstances and failed to demonstrate

[7] It was not shown that other officers could not have been located to transport Cronin from the scene. Indeed, there was evidence that several other officers arrived during the search.

We also reject as speculative on this record the Commonwealth's contention that it is harder to guard a door to a motel room than an apartment in a multi-family building. There is nothing to show that this room had more than the exit to the hallway which was being carefully monitored by the police.

consent for the search or the seizure. As was recognized by the judge, these factors subject the case to the reasoning of the *Huffman* decision, where the police also had plain view of suspected contraband but lacked exigent circumstances or consent to enter.[8] In *Huffman*, it was held that "in the absence of exigent circumstances, [the] police officers could not enter Huffman's home without a warrant," 385 Mass. at 124, even though they had first-hand knowledge that a crime was probably there still in progress. On the facts found by the judge, the same result follows in this case. In circumstances where they were required to seek a warrant, they ignored the warrant requirement and proceeded to create their own exigency. Cf. *Commonwealth* v. *Forde*, 367 Mass. at 802. Compare *Commonwealth* v. *Boswell*, 374 Mass. 263, 270 (1978).

What has been said disposes of the contentions as to the items that were seized from the motel room which were the subject of the judge's order on the motion to suppress. The police later seized $481 from the defendant in the course of an inventory search during the booking procedure at the police station. The judge did not rule on that seizure, which was not expressly covered by the motion to suppress. It is obvious that the money must also be suppressed as the "fruit of the poisonous tree."

The order suppressing the items described in the attachment to the motion to suppress is expanded to include the $481 taken from the defendant during the booking procedure at the police station. As so expanded the order is affirmed.

*So ordered.*

---

[8] In *Huffman*, the police observed Huffman's third floor apartment from the third floor of a nearby factory building. Through a window in Huffman's apartment, which had no curtain or shade, the police saw Huffman and two other men packaging an herb which the police believed was marihuana. The police entered Huffman's apartment building through an open front door and an unlocked hallway door and went to the third floor. There, they were able to look through the partially open door of Huffman's apartment from which emanated a strong odor of marihuana. Through the open door, the police saw one of the men still bagging the herb. The police entered, seized the herb and other materials, and arrested Huffman. See 385 Mass. at 123-124.