Cowin, J.
The defendant, Angel Miranda a/k/a Angel Miguel Lopez, has been indicted for trafficking in cocaine in a weight of twenty-eight grams or more; possession of marijuana with intent to distribute; and violating provisions of the controlled substances act within a school zone. He has filed a motion to suppress all evidence seized as a result of a warrantless search and as a result of a second search pursuant to a warrant. The defendant has agreed that the search warrant is based upon the evidence obtained in the warrantless search. Accordingly, the defendant has stipulated that if the warrantless search is valid, the search warrant is likewise valid. The Commonwealth has similarly agreed that if the warrantless search is invalid, the search warrant is also invalid.
A hearing on the defendant’s motion was held on April 16, 1996. At the hearing, two witnesses testified: Officers Steven Haberek and Paul Dusablon, both of the Lynn Police Department. After the hearing and evaluation of the credibility of the witnesses, I make the following findings and rulings.
FINDINGS OF FACT
On February 10,1995, at about noon, Officers Steven Haberek and Paul Dusablon of the Lynn Police Department were in the vicinity of 85 Fayette Street when they received information from another officer, Officer Pohle, who worked in that area. Officer Pohle was a community liaison officer. One of his duties was to listen to the concerns and problems of the community residents. As a result of a discussion among them, the three officers went to 85 Fayette Street. That address was a multi-fam-ily unit consisting of four apartments, two on each floor. On each floor, there was one apartment on each side of a hall. The three officers entered the hall of the apartment building through an unlocked front door.[1] There was no inside door or locked entry of any type.
The officers’ purpose in entering the building was to learn the identity of some or all of the occupants of the building by speaking with them.[2] The officers were in full uniform with their weapons visible.
On the left side of the hall on the first floor were two doors, both of which were for the apartment on the left (“the apartment”). As the officers approached the apartment, Officers Haberek and Dusablon smelled a strong marijuana smell.[3] Officer Haberek has had training at the police academy in drug investigation. He had been involved in approximately fifteen arrests, searches or investigations involving marijuana before the date in question and had smelled marijuana on approximately ten to fifteen occasions. He had made about five to ten arrests for marijuana. Officer Dusablon, who had been a police officer for two and one-half years, recognized the smell of marijuana from his prior drug investigations and from when he was younger, before he was a police officer, when he had smelled marijuana at parties.
Officer Dusablon approached the rear door of the apartment. He determined that the marijuana odor was emanating from that apartment.
*490 Both Officers Dusablon and Haberek also heard male voices inside the apartment. Officer Haberek could not distinguish any specific words. Officer Dusablon testified that he heard a male voice say: “He should turn himself in. He has warrants on him.” I consider this testimony to be dubious at best. It strains credulity that such a statement would be made at all, at any time, let alone at the particular moment that a police officer happened to be outside the door. Further, both the officers were at almost the identical spot outside the door. One testified he could hear conversation, but could not make out the specific words. This makes it even less likely that the second officer would be able to discern exactly what was said.
Officer Dusablon then left the hall to go to the outside of the building to prevent the occupants from leaving. As Officer Dusablon walked back down the hall to leave the building, he banged on the rear door of the apartment and said: “Police.” Once outside, Officer Dusablon positioned himself at the corner of the building at a point from which he could watch the front door. He arrived at that position within a minute of banging on the rear door of the apartment.
As Officer Dusablon exited the building, Officer Haberek, with Officer Pohle behind him, knocked on the front door of the apartment. Officer Haberek heard movements inside the apartment and then a male voice asked who was there. Officer Haberek responded: “Lynn Police. Open the door.” The door was opened only about three to four inches by a heavy-set Hispanic male. Officer Haberek asked this man if he lived in that apartment and he said: “No.” Officer Haberek asked the man if he spoke English and the reply was in the affirmative. Officer Haberek asked if the police could enter the apartment and the man said:. “No,” and shut the door. The officer then knocked on the door again. After a moment or two, the door was re-opened by the same Hispanic male. This time the door was opened completely; the male inside stood “aside of the door,” and Officer Haberek smelled a strong odor of marijuana. He and Officer Pohle entered the apartment.[4] They said: “Stay where you are; police.”
While Officers Haberek and Pohle were gaining entry to the apartment, Officer Dusablon was outside the building and saw a window open and a dark hand throw an object out the window. The shade on the window was drawn so that the officer could not see the face of the person discarding the object. The officer picked up the item; it was a plastic baggie containing what appeared to be crack cocaine. This observation was made without opening the baggie. Officer Dusablon then went back inside the building into the apartment to show his two fellow officers what he had retrieved. The reasonable inference is that the cocaine was thrown from the apartment as the result of the knocking on the door by the police.[5]
When the officers entered the apartment they found four men inside, all in a kitchen area that was immediately inside the front door of the apartment. The defendant was one of the men in the apartment.[6] Marijuana seeds and roaches were strewn about the apartment. When Officer Haberek saw Officer Dusablon holding a plastic bag with a white substance that appeared to him to be crack cocaine,[7] he radioed for other officers and another patrol car. Warrant checks were done and eventually the individuals in the apartment, including the defendant, were placed under arrest.
Officer Haberek returned to the police station and obtained a search warrant for the apartment based upon the above information. During the execution of the warrant, over a pound of marijuana was found inside the apartment in one bedroom. Other smaller amounts of marijuana were found plus paraphernalia related to marijuana. The baggie that Officer Dusablon had seen thrown from the window was determined to contain sixty-three grams of cocaine. During the execution of the search warrant, Officer Dusablon observed that the window from which he had seen the baggie thrown was in the front bedroom of the apartment.
DISCUSSION
On the evidence presented, it is clear that in this case when the police entered the apartment building they did not have probable cause to believe a crime was being committed in the building. They entered the apartment building simply to learn the identity of its occupants by knocking on an apartment door or doors and conversing with the occupants. Thus, the initial issue is whether the police may enter the unlocked hallway of an apartment building simply to ascertain the identity of the apartment’s occupants.
To resolve this, it is necessary to decide whether there has been a “search" in a constitutional sense. Commonwealth v. Frazier, 410 Mass. 235, 244 n.3 (1991); Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). The precise question is “whether the police conduct has intruded on a constitutionally protected reasonable expectation of privacy. The measure of the defendant’s expectation of privacy is 1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and 2) whether society is willing to recognize that expectation as reasonable.” Commonwealth v. Montanez, supra at 301. Massachusetts cases hold that no search or seizure is involved by police entry into an unlocked common area of an apartment building, such as the hall in this case, because anyone may enter such an area. The tenants’ expectation of privacy is limited because others must use the space. See, for example, Commonwealth v. Acosta, 416 Mass. 279 (1993), and Commonwealth v. Boswell, 374 Mass. 263 (1978).[8] The unlocked hall is open to all; any person may gain entry to it. There is no reason police officers should have any less access to the hall simply because they are police. There can be no reasonable expectation of *491 privacy in the hall because tenants in the building are presumably on notice that there is no locked front entryway.
The Supreme Judicial Court has held that when the hallways of the apartment building have not been made inaccessible to the general public, listening with the naked ear from the hallway outside a particular apartment is not deemed to intrude on any justified expectation of privacy of the apartment’s occupants. Commonwealth v. Dinnall, 366 Mass. 165, 166-68 (1974). A tenant cannot complain if the police stationed in the hall overhear the conversation in the tenant’s apartment. Commonwealth v. Boswell, supra at 269. If the police may stand in the hall and hear a conversation within an apartment, it is equally permissible to stand in the hall and smell an odor from an apartment. For constitutional purposes, there is no difference.
All the cases cited by the Commonwealth or located by the Court involve police entry into a building for a specific purpose, e.g., because they had a warrant for a tenant in the building or because the police were involved in an investigation of some sort. See, for example, Commonwealth v. Boswell supra; Commonwealth v. Dinnall, supra; State v. Cloutier, 544 A.2d 1277 (Me. 1988). Then, while on the premises for some lawful identified purpose, the police observed some other illegal activity. Thus, there is a slight distinction between the decided cases and the present case. In the instant case, the only evidence of why the police were in the apartment building was to determine the identity of its occupants. I do not know for what purpose they sought the identity of the occupants. I only know that their identity was to be ascertained “as a result of a conversation with Officer Pohle.” There is no evidence of any “investigation” in which the police were involved.
If there is a requirement that the police entry into the hallway be for some reason related to police business (and I am not at all certain that there is such a requirement), there being no evidence to the contrary, I infer from the evidence that was presented that the police were there on what they viewed as police business. There is nothing to suggest that the police entered the apartment hallway for a reason unrelated to their work. They were on duty, in uniform, wearing their guns. They went to the building as a result of a conversation with the community liaison officer. All that is necessary, it would appear, even taking the most stringent view, is that the police have a subj ective good faith belief that they are doing legitimate police work. This they had in this case.
While the police were lawfully in the hallway, they smelled an odor of marijuana emanating from the first floor left apartment. They then knocked on the apartment doors. The question thus becomes whether knocking on the apartment doors is a stop or seizure requiring as a justification reasonable suspicion of criminal activity. “That depends upon whether or when there was a ‘show of authority’ which could be expected to command compliance." Commonwealth v. Houle, 35 Mass.App.Ct. 474, 475 (1993).
The police may make brief on-the-street inquiries without implicating the Fourth Amendment of the United States Constitution. Id. They may also knock on the door of an apartment in an unlocked common area. This is doing no more than any citizen could do by entering a common area and knocking on the door. Commonwealth v. Acosta, supra, at 282. This was not, however, an on-the-street inquiry. Nor was it simply a knock by a citizen who would leave if told he could not gain entry. Here, the police did not just knock; they announced themselves as police officers. A knock on the door by a uniformed police officer is an order that should reasonably have been expected to command compliance. The result of the compliance with the order was an intrusion on the defendant’s privacy. The Fourth Amendment was implicated when the apartment door was opened pursuant to the police officer’s command. Id.; see also Commonwealth v. Hamilton, 24 Mass.App.Ct. 290, 294 (1987) (search began when police compelled defendant to open the door by announcing police presence).
It is a familiar rule that “warrantless entries are per se unreasonable unless they fall within one of the few narrowly drawn exceptions to the Fourth Amendment warrant requirements.” Commonwealth v. Amaral, 16 Mass.App.Ct. 230, 233 (1983). Probable cause must be coupled with exigent circumstances to justify a police intrusion into the home. Commonwealth v. Forde, 367 Mass. 798, 800 (1975). Whether exigent circumstances exist depends upon an evaluation of all the circumstances as they appear to the police at the time. See Commonwealth v. Hall 366 Mass. at 802; Commonwealth v. Huffman, 385 Mass. 122, 125 (1982).
“Under the exception for exigent circumstances, there must be a showing that it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict.” Commonwealth v. Fords, 367 Mass. 798, 800 (1975). The Commonwealth bears the burden of establishing the existence of exigent circumstances. Commonwealth v. Hall, 366 Mass. 790, 801-02 (1975). Commonwealth v. Donoghue, 23 Mass.App.Ct. 103, 108 (1986). Each case depends on its own facts, but there are guidelines for resolution of the question.
In Commonwealth v. DiSanto, 8 Mass.App.Ct. 694, 700 (1979), the Court described these guidelines as follows: “(1) the crime in question was one of violence and the suspect had been reported to be armed and dangerous: (2) probable cause to believe that the suspect has committed a felony and strong reason to believe the suspect is in the particular dwelling; (3) the entry has been made peaceably (preferably in the daytime); (4) a likelihood that the delay attendant upon securing a warrant would facilitate the destruction of *492 evidence or property; (5) a likelihood that the suspect would escape if not promptly apprehended; and (6) some showing of a reasonable basis for believing that delay would subject the officers or others to physical harm . . .”
The present case is very similar to the situation in Commonwealth v. Hamilton, supra, in which a motion was allowed suppressing the police seizure of drugs as a result of a warrantless search of a motel room. In that case, the Court ruled that regardless of whether the police had probable cause to believe drugs were in the motel room, no exigent circumstances excused the failure to obtain a warrant, as the Commonwealth had not shown that the defendant was armed, that he might have fled or was aware of the police presence (before the police knocked on the motel room door), that the destruction of the contraband was imminent or that it was impractical to obtain a warrant.
Commonwealth v. Huffman, supra, presents another similar fact situation. In Huffman, the police, while searching the third floor of a factory for intruders, saw three men in an apartment across the street transferring a green herb from one bag into other smaller bags. As in Hamilton, the Court held that there were no exigent circumstances justifying the police officers’ warrantless entry into the apartment in the absence of a showing that defendant was armed, that he might flee or even was aware of the police presence, that there was a specific threat that the marijuana was about to be removed or destroyed or that to obtain a warrant would have thwarted the arrest.
In the present case, there was no indication that the defendant (or any of the occupants of the apartment) were armed, that he (or they) might flee or that he (or they) were aware (until the police knocks on the door) of the officers’ presence in the hall. The crime was not one of violence and there was no evidence of any safety risk to the other residents of the apartment if the officers failed to act immediately. Further, there was no suggestion that the defendant had any reason to destroy the contraband — at least until the police knocked on the door. The police may not manufacture the circumstances that create the exigency. Commonwealth v. Hamilton, supra at 295.
Further, in the instant case, there was no evidence to indicate that it would have been difficult for the police to secure the premises while a warrant was obtained. The incident occurred at about noon which is a time when the courts are open. The officers in the hall could have kept watch on the apartment while a warrant was sought. If something unexpected occurred during the wait for a warrant, that might have provided the exigency that would justify a warrantless entry. See Commonwealth v. Hamilton, supra. As was said in that case, “In circumstances where they were required to seek a warrant, they (the police) ignored the warrant requirement and proceeded to create their own exigency.” Id. at 295.
Officer Dusablon’s observation of the cocaine being thrown from the window does not assist the Commonwealth. Even assuming that Officer Dusablon knew the cocaine was being thrown from a window of this apartment (because there was only one apartment on the first floor left), the cause of the cocaine being thrown out was the knock on the door by either Officer Dusablon or Officer Haberek. I have concluded that both knocks were unlawful.[9] The inference is that those knocks on the door, or one of them, caused the cocaine to be thrown from the window. The cocaine is therefore the fruit of unlawful police activity and may not be used to justify a search. It must also be suppressed. The observations of the marij uana within the apartment are likewise the fruit of the unlawful knock on the door by Officer Habarek and must be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963).
The Commonwealth has conceded that if the war-rantless search is invalid, the search warrant based upon such warrantless search is also invalid. Accordingly, all items seized as a result of both the warrant-less search and the search pursuant to the warrant are to be suppressed.
ORDER
For the foregoing reasons, the defendant’s motion to suppress is ALLOWED.

The officers had not sought permission of the owner of the building to enter it. Even if they had committed a technical trespass, this would not in itself render a search invalid. See Commonwealth v. Simmons, 392 Mass. 45, 49 (1984) and Commonwealth v. Thomas, 358 Mass. 771, 775 (1971).

It is not clear from the testimony whether the officers purpose was to learn the identity of all the occupants of the building or the identity only of the occupants of the first floor left apartment. This uncertainty does not affect the disposition of this motion.

Marijuana has a characteristic burning odor. See Commonwealth v. Skea, 18 Mass.App.Ct. 685 (1984).

The Commonwealth does not contend that this set of facts was the equivalent of an entry by consent.

It is of no significance to the resolution of this motion whether the knock that caused the cocaine to be thrown out the window was the knock of Officer Dusablon or that of Officer Haberek. Both knocks had the same effect. The police were announcing their presence and ordering the occupants to open an apartment door.

It appears from the papers submitted that it is agreed that the defendant lived in the apartment.

As stated above, Officer Haberek had been trained at the police academy in drug investigations. In addition, he had been involved in about thirty to thiriy-five cocaine-related investigations prior to this incident and observed crack cocaine about twenty to twenty-five of those times.

A defendant who is charged with a crime “in which possession of the seized evidence at the time of the contested search is an essential element of guilt,” has automatic standing to challenge the legality of the search. Commonwealth v. Frazier, supra: Commonwealth v. Amendola, 406 Mass. 592, 601 (1990).

Officer Dusablon’s knock gave rise to Fourth Amendment considerations just as did Officer Haberek’s.