## COMMONWEALTH vs. STEPHEN P. McAFEE.

No. 03-P-1660.

Middlesex. October 7, 2004. - May 9, 2005.

Present: PERRETTA, DOERFER, & MILLS, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure. *Search and Seizure,* Securing of premises, Probable cause, Exigent circumstances, Warrant, Inevitable discovery. *Probable Cause. Practice, Criminal,* Motion to suppress.

This court concluded that a warrantless entry by police officers into a criminal defendant's dwelling, done for the purpose of impounding the premises while a search warrant was being sought, was not constitutionally permissible, where, even assuming that the police had probable cause to believe that the defendant was distributing cocaine that was located on the premises, there was no specific information supporting an objectively reasonable belief on the part of the police, prior to the time they approached the premises, that evidence would be removed or destroyed unless preventative measures were taken [470-475], and the police did not, under the circumstances, obtain justification for their warrantless entry through announcing their presence to the defendant at his door [475-477]; therefore, while a District Court judge erred in denying the defendant's motion to suppress evidence, at least with respect to certain items seized during the impoundment and the defendant's statement at the time of his arrest [479], cash and plastic baggies seized at the dwelling during the later execution of a validly issued search warrant could properly be admitted in evidence pursuant to the independent source rule [477-478], and a handgun seized in plain view during the impoundment was admissible under the inevitable discovery rule [479-481].

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on November 25, 2002.

A pretrial motion to suppress evidence was heard by *Phyllis J. Broker*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*James Dilday* for the defendant.

*Gregory H. Matthews*, Assistant District Attorney, for the Commonwealth.

DOERFER, J. Before us is the defendant's interlocutory appeal from the denial of his motion to suppress evidence obtained after the police made a warrantless entry into his dwelling to impound the premises while a search warrant was sought. Broadly put, the issues raised here concern whether the warrantless intrusion was constitutionally permissible and, if not, whether the independent source or inevitable discovery rules nonetheless rendered the evidence admissible. The motion judge held evidentiary hearings and made written findings of fact and rulings of law. We begin by summarizing the explicit findings and the undisputed evidence.

*Background.* During January and February, 2002, the Woburn police conducted an investigation of the defendant, whom they suspected of dealing drugs from a dwelling at 88 Creston Avenue in Woburn. They had focused on a man named Patrick Mallon when they learned from a confidential informant (CI) in early January, 2002, that Mallon was buying crack cocaine from a man named "Steve" at 88 Creston Avenue. On January 14, 2002, the police arranged to make a controlled buy of cocaine through Mallon using the CI. First the police searched the CI and found he had no cocaine. They then surveilled the CI, who met with Mallon and a woman named Robin Berry. The police followed the three as they drove together to 88 Creston Avenue. The officers observed Mallon leave the vehicle, enter 88 Creston Avenue, emerge a short time later, and reenter the vehicle. The vehicle was followed back to a predetermined location, where the CI produced to police four grams of cocaine. The CI reported that he bought the cocaine from Mallon after Mallon had obtained it from Steve at 88 Creston Avenue.

During the first week of February, 2002, the police spoke with Berry and Mallon. Berry told them that she had been buying cocaine with Mallon for six months, that she purchased cocaine at 88 Creston Avenue, and that she had gone there to buy cocaine with the CI and Mallon on January 14, 2002. Mallon told them that he had been buying cocaine from Steve for six months, that the modus operandi was to page Steve and then

go to the rear door on the first floor of 88 Creston Avenue, and that he would wait in the kitchen while Steve went upstairs to get the cocaine. Mallon confirmed the January 14, 2002, transaction.

The investigation culminated when police observed, during a surveillance of 88 Creston Avenue at 6:42 P.M. on February 11, 2002, a truck arrive and its driver go to the rear door. A light on the second floor went on for a minute. The individual left the house, returned to his truck, and drove off. The police stopped and questioned him about his activities at the address in question. He was identified as Derrick Shattuck and told the police that he had just purchased cocaine from "Steve" at that address. Shattuck produced cocaine to the police. He said he was introduced to Steve by Mallon and had been buying from Steve at that address for about three months. According to Shattuck, Steve always had cocaine readily available. Shattuck also confirmed the modus operandi, described by Mallon, of waiting in the kitchen while Steve went upstairs to get the cocaine. Shattuck declined to do a controlled buy.

The police determined to seek a search warrant and to secure the premises while the warrant was being sought and prior to its execution. Some police officers continued to hold Shattuck incommunicado while others went to 88 Creston Avenue, which was a few blocks away. The place where they detained Shattuck was not visible from 88 Creston Avenue, and there was no evidence that the defendant was aware of Shattuck's detention.

When the police arrived at 88 Creston Avenue, they knocked on the door. Through the window panes at the top of the door they saw the defendant, who matched a general description of "Steve." An officer asked through the door if they could speak with the defendant, who said "no" and then walked quickly out of the officers' sight.[1] An officer then forced open the door with a pry bar. Announcing "police," five or six officers entered the

---

[1]The judge made no explicit finding whether the officers visible to the defendant through the door were wearing uniforms or displaying badges. However, there was testimony suggesting that at least the officer who spoke to the defendant through the door had a badge in view, and that at least one of the officers outside the door was a "patrol officer" rather than a detective. We take the judge as having implicitly found that the defendant saw through the door's windows that he had police officers on his doorstep.

premises and restrained and arrested the defendant as he was coming down from upstairs.

As the defendant was being pat frisked, he stated to the officers, without first being questioned, that he had a .25 caliber weapon upstairs in a dresser drawer and marijuana in his pocket. A bag of marijuana was recovered from the defendant's person. The officers then finished securing the interior of the home by sweeping it for occupants, but did not at that time further search it.

The police then submitted their application for a search warrant shortly after midnight, which included information about the events both prior and subsequent to their entry into the premises. The warrant issued at 12:15 A.M., and upon its execution at 12:30 A.M. the police found a .25 caliber handgun in an upstairs dresser drawer (which was where the defendant had said it was), approximately $1,600 in cash, and two "cut, clear plastic sandwich baggies." Apparently, no cocaine was found.

A complaint issued in District Court charging the defendant with possession of cocaine with intent to distribute; drug distribution in a school zone; possession of marijuana; unlawful possession of a firearm; and defacement of a firearm serial number. He brought a pretrial motion to suppress the physical evidence and his statement to police, and evidentiary hearings were held on May 19 and May 28, 2003. The judge denied the motion in a memorandum of decision dated August 26, 2003, ruling that "[t]he police had reasonable belief that the cocaine would be removed or destroyed unless preventive measures were taken. See *Commonwealth* v. *DeJesus*, 439 Mass. 616 (2003)." A single justice of the Supreme Judicial Court permitted the defendant to bring this interlocutory appeal.

*Discussion.* " 'The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment [to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights were] designed to circumscribe by the general requirement of a judicial determination of probable cause.' *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975). Federal and State case law delineates clear boundaries for permissible entry by police officers into a

home in order to search or arrest. In the absence of a warrant, two conditions must be met in order for a nonconsensual entry to be valid: there must be probable cause and there must be exigent circumstances." (Footnote omitted.) *Commonwealth* v. *DeJesus*, 439 Mass. 616, 619 (2003).

Although the defendant does not challenge the judge's determination that the police had probable cause to believe the defendant was distributing cocaine that was located on the premises, he contends that they had no justification for entering the premises without a warrant. The judge ruled that "[t]he police had reasonable belief that the cocaine would be removed or destroyed unless preventive measures were taken," relying on *DeJesus*, *supra* at 621, and thus took the view that the police permissibly impounded the interior of the premises to preserve cocaine and related evidence during the time necessarily taken to obtain the search warrant. We examine the contours of the doctrine invoked.

1. *Impoundment of premises to preserve evidence during the warrant application process.* State and Federal case law has recognized generally that no unreasonable search occurs when police "secure" a dwelling, on the basis of probable cause, in order to prevent the destruction or removal of evidence while a search warrant is being sought. *Id.* at 620-621, and cases cited. The precise boundaries of this police authority are less well explored. In *DeJesus*, 439 Mass. at 621-622, the Supreme Judicial Court for the first time drew an art. 14 distinction between, on one hand, securing a dwelling on its exterior and, on the other hand, entering and controlling it from the inside. In so deciding, the court "adhere[d]" (under art. 14) to Professor LaFave's analysis of *Segura* v. *United States*, 468 U.S. 796 (1984), that although the Fourth Amendment allows, without exigent circumstances, a warrantless exterior impoundment of premises pending obtaining a search warrant — i.e., a seizure alone — a physical entry to effect an interior impoundment involves both a seizure and a search. See *DeJesus*, *supra* at 621-622, citing 3 LaFave, Search & Seizure § 6.5(c), at 365-366 (3d ed. 1996). This warrantless search, albeit a limited one, requires a greater justification than does the external seizure: "We conclude that there is a fundamental difference between

securing or controlling the perimeter of a dwelling from the outside and the entry and physical surveillance of a dwelling from the inside." *DeJesus, supra* at 621. The court therefore announced that justification of a warrantless entry into a dwelling to conduct an interior impoundment for preventing destruction or removal of evidence requires circumstances of the following form: "specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken." *Ibid.*[2]

We next consider how the court applied this rule in *DeJesus* itself. The police had probable cause to believe that cocaine was being kept at the defendant's apartment, *id.* at 627, but they had no information indicating that the dwelling was occupied at the time they entered and secured it by searching for occupants. *Id.* at 623-624. The defendant and an accomplice previously had been arrested elsewhere and were in custody at the time of the entry. *Id.* at 617-618. The Commonwealth argued that justification for the entry arose from a risk that others knew of the defendant's arrest and that someone inside his apartment might have removed or destroyed evidence.[3] *Id.* at 622-623. The court rejected the contention:

> "We conclude that, although the officers clearly had a right to control the premises from the outside until a search warrant was obtained, they had no basis for believing that immediate entry was necessary to prevent the destruction of evidence. For purposes of deciding this case, we need not determine with precision the minimum requirements that would justify such an entry, as the facts and circumstances here lacked an obvious prerequisite. There was no indication whatsoever that the dwelling was occupied at the time — the officers had no knowledge that anyone was inside, there was no response to their knocking at the

---

[2]Although the *DeJesus* court announced a test for justification of a warrantless entry and limited impoundment search, it did not explicitly link its test to the exigent circumstances exception to the warrant requirement. *Id.* at 620-624 & nn.3, 8.

[3]There was evidence that the arrest occurred in a public area in front of a large crowd and that a police officer had overheard a woman in the apartment of the defendant's accomplice informing an unknown telephone caller that the accomplice had been arrested. *DeJesus,* 439 Mass. at 623 n.5.

door, and they apparently heard no sounds coming from within. By definition, any evidence located within an unoccupied dwelling can be fully protected by controlling access to that dwelling from the outside. There can be no justification for a warrantless entry absent at least an objectively reasonable belief that someone is inside. On the facts of this case, we agree with the judge's determination that '[a]n officer easily could have been stationed at the door to secure the apartment while [the police] proceeded to obtain a search warrant.' " (Footnote omitted.)

*Id.* at 623-624.

2. *Application to instant case.* The motion judge did not indicate her view of exactly when the constitutional justification for entry arose. Two possibilities suggest themselves. First we consider whether sufficient basis existed just prior to the police approach to the premises, as the Commonwealth first contends. If not, we shift our inquiry to the time when the police interacted with the defendant at his door.

a. *Prior to police approach.* We consider whether probable cause to believe cocaine was inside the home, plus police knowledge of the defendant's presence there, without more, justified an interior impoundment of the premises. To be sure, there are impoundment cases decided before *DeJesus* that might be read to support the view that such a known presence would be enough. See *Commonwealth* v. *Blake*, 413 Mass. 823, 827-830 (1992)[4]; *Commonwealth* v. *Voris*, 38 Mass. App. Ct. 377, 380-381 & n.1 (1995); *Commonwealth* v. *Navarro*, 39 Mass.

---

[4]In its discussion, the *DeJesus* court took pains in a footnote to factually distinguish the interior impoundment upheld in *Commonwealth* v. *Blake*, 413 Mass. at 827-828 n.6, 829-830:

"A review of the record in that case reveals that the Federal agents who entered the defendant's house to secure it while awaiting the issuance of a search warrant did so with knowledge that other people involved in the defendant's drug operation had been present at the dwelling the day before and that at least one person was inside the dwelling shortly before the sale that resulted in the defendant's arrest on the street nearby."

*DeJesus*, 439 Mass. at 624 n.7. The *DeJesus* court's discussion of the facts of *Blake* seems to reflect a view that in *Blake* there existed a real risk that

App. Ct. 161, 163-164 (1995). Other cases, however, suggest that mere known presence would be insufficient to satisfy the exigent circumstances exception to the warrant requirement. See *Commonwealth* v. *Huffman,* 385 Mass. 122, 125-126 (1982); *Commonwealth* v. *Hamilton,* 24 Mass. App. Ct. 290, 293-295 (1987); *Commonwealth* v. *Wigfall,* 32 Mass. App. Ct. 582, 587-588 (1992); *Commonwealth* v. *Street,* 56 Mass. App. Ct. 301, 306-307 (2002). We believe we are bound to resolve the issue by reliance on the art. 14 test most recently announced in *DeJesus,* which requires, for an interior impoundment, "specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed unless preventative measures are taken." 439 Mass. at 621. By this measure, the police had not acquired justification for the warrantless entry prior to approaching the premises. As in *DeJesus,* "although the officers clearly had a right to control the premises from the outside until a search warrant was obtained, they had no basis for believing that immediate entry was necessary to prevent the destruction of evidence." 439 Mass. at 623.

In so deciding, we emphasize the complete absence of evidence of a risk that the defendant had discovered or been informed of the police investigation or the detention of his recent customer.[5] See *Commonwealth* v. *Ortiz,* 376 Mass. 349, 355 (1978); *Commonwealth* v. *Huffman,* 385 Mass. at 125 & n.6; *Commonwealth* v. *Sergienko,* 399 Mass. 291, 296-297 (1987); *Commonwealth* v. *Amaral,* 16 Mass. App. Ct. 230, 234-235 (1983); *Commonwealth* v. *Hamilton,* 24 Mass. App. Ct. at 293-294; *Commonwealth* v. *Rotolo,* 45 Mass. App. Ct. 927, 928 (1998); *Commonwealth* v. *Harris,* 47 Mass. App. Ct. 481, 486-487 (1999). There was no evidence that the physical configuration of the scene made exterior control of the premises, through continued surveillance or otherwise, likely to alert the defendant to police scrutiny. See *Commonwealth* v. *Hamilton,* 24 Mass.

confederates of the defendant were on the premises and had become aware of the police activities. If there were no such risk in *Blake,* it is our view that the entry would have violated art. 14 as later interpreted in *DeJesus.*

[5]Although there was testimony that Shattuck had a cellular telephone, there was no evidence that he had an opportunity to contact the defendant after the stop. The police continued to detain him for the express purpose of preventing communication.

App. Ct. at 294. Similarly absent was evidence that the participants in the recent drug sale would disperse immediately afterwards from a temporary location such as a hotel, or that the defendant was likely to become suspicious when a confederate detained by police failed to return or make contact.[6] See *Commonwealth* v. *Curcio*, 26 Mass. App. Ct. 738, 746 (1989); *Commonwealth* v. *Martinez*, 47 Mass. App. Ct. 839, 842-843 (1999). Also of note is the lack of evidence that, in the expected time frame of the warrant application process, either prearranged drug sales were known to be scheduled or spontaneous drug sales were reasonably believed to be imminent in light of prior sales patterns at that location.[7]

b. *Upon speaking with the defendant at his door.* Although no basis for entry existed beforehand, once the police officers contacted the defendant at his home and alerted him to their presence, the situation changed. They had knocked on the door and simply asked to speak with him.[8] He not only declined, but turned around and began to walk quickly back into the apartment. Upon observing this reaction, the police entered the dwelling, detained the defendant, and conducted a sweep of the premises for other persons. These actions were predicated at that point upon a reasonable belief that the defendant was hastening to destroy or remove the cocaine, a typically adequate basis for warrantless intrusion, see *Commonwealth* v. *Hall*, 366 Mass. 790, 801-804 (1975); *Commonwealth* v. *Amaral*, 16 Mass. App. Ct. at 233-235, and one that would pass muster under the *DeJesus* test for an interior impoundment. The crux of the matter, however, is whether by coming to the defendant's back

---

[6]Nothing in the record shows that Shattuck was anything more than a habitual weekly customer of the defendant, or that the defendant might have been expecting Shattuck to call or contact him soon after the sale.

[7]This deficiency in the record invalidates the Commonwealth's speculative argument that the "officers reasonably believed that any delay in securing the residence would create a significant risk of the loss of cocaine through the defendant's continued sale of crack cocaine to various customers who could arrive at his back door." See *Commonwealth* v. *Huffman*, 385 Mass. at 126 n.7 (no evidence that defendant planned immediate distribution of marijuana). Indeed, Shattuck had told the police that the defendant always had a ready supply of cocaine to sell.

[8]The judge's findings indicate that the police did not behave coercively in posing the question.

door and asking to speak with him, the police impermissibly "created" their own justification for entry, as the defendant argues. See *Commonwealth* v. *Forde*, 367 Mass. at 802-803; *Commonwealth* v. *Molina*, 439 Mass. 206, 210 (2003); *Commonwealth* v. *Hamilton*, 24 Mass. App. Ct. at 293-295.

Ordinarily, police "officers may make inquiry of anyone they wish and knock on any door, so long as they do not implicitly or explicitly assert that the person inquired of is not free to ignore their inquiries." *Commonwealth* v. *Murdough*, 428 Mass. 760, 763 (1999). However, it is long settled that "where the exigency is reasonably foreseeable and the police offer no justifiable excuse for their prior delay in obtaining a warrant, the exigency exception to the warrant requirement is not open to them." *Commonwealth* v. *Forde*, 367 Mass. at 803. There is no indication in the *DeJesus* opinion that the *Forde* rule is inapplicable to interior impoundments. Because both the exigent circumstances exception and the *DeJesus* test for an interior impoundment serve as constitutional justification for warrantless entry, we believe the *Forde* rationale must equally apply to both situations.[9]

For purposes of the *Forde* analysis, whether there was "prior delay in obtaining a warrant" is related to when probable cause arose. The judge did not articulate a conclusion on this point. The Commonwealth appears to be of the view that probable cause did not exist until the police stop of Shattuck on February 11, the night of the entry. To the contrary, it is clear from our decisions that the police had probable cause to seek a search warrant as of the January 14 controlled buy, even though that buy was conducted through an unsearched intermediary (Mallon), because police surveilled the intermediary as well as the confidential informant. See *Commonwealth* v. *Tshudy*, 34 Mass. App. Ct. 955, 955-957 (1993); *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 427-428 (1995). Moreover, if there were any doubt that probable cause had been established by the controlled buy, it should have been dispelled by the corroborating interviews of Mallon and Berry in the first week of February.

---

[9]We note that while *DeJesus* was decided under art. 14, *Forde* was decided under the Fourth Amendment. See *Forde*, 367 Mass. at 802-803, 805-806; *DeJesus*, 439 Mass. at 622.

Thus, the police had at least four days to obtain a search warrant, but instead chose to conduct a surveillance of a known, stationary drug distribution operation on a night of their choosing, to detain a departed buyer, and to move in at a time of their choosing without having sought a warrant.[10] The facts show that the police could easily foresee that presenting and announcing themselves on the defendant's doorstep and asking to come in and to speak with him would in all likelihood induce the defendant not only to refuse them admission but also to take steps to conceal or destroy his supply of drugs. Nor has the Commonwealth offered a justifiable excuse for the prior delay in obtaining the warrant. See *Commonwealth v. Forde*, 367 Mass. at 801-802 (police had probable cause one week prior to police raid and had three hours before development of easily foreseeable exigency that one of arrested confederates would be released that evening and try to warn occupants of defendant's apartment to destroy or remove drugs); *Commonwealth v. Krisco Corp.*, 421 Mass. 37, 47 (1995). Compare *Commonwealth v. Huffman*, 385 Mass. at 124-127; *Commonwealth v. Hamilton*, 24 Mass. App. Ct. at 295. Contrast *Commonwealth v. Boswell*, 374 Mass. 263, 270 (1978) (*Forde* rule did not invalidate warrantless home arrest because defendant's true identity as armed robber being sought was not verified until she answered police knock at door and matched store surveillance photograph; "At least when probable cause is in doubt, the Forde rule does not prevent the police from knocking on the door of a dwelling in the hope that a suspect will answer the door"). In all the circumstances, we conclude that the police did not obtain justification for the warrantless entry through announcing their presence.[11]

3. *Inevitable discovery and independent source.* Having

---

[10]This was not a case where police conducting an undercover buy did not learn the time or location of the drug sale until it was too late to obtain a warrant. See *Commonwealth v. Lee*, 32 Mass. App. Ct. 85, 88 (1992); *Commonwealth v. DiToro*, 51 Mass. App. Ct. 191, 196 (2001); *Commonwealth v. Ricci*, 57 Mass. App. Ct. 155, 166 (2003).

[11]We note that the United States Supreme Court has not rendered a controlling opinion on analogous facts, but our decision appears to be consistent with Fourth Amendment jurisprudence in the United States Court of Appeals for the First Circuit indicating that where surveilling police had probable cause (to search a third person's home for the subject of an arrest warrant) and

concluded that the police entry into the dwelling was not permissible, we consider the remedy. "Evidence need not be excluded under the 'fruit of the poisonous tree' doctrine established in *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963), even if the government misconduct was a cause 'in fact' of the discovery of the evidence, 'if the government obtained the evidence through an independent source, if the connection between the improper conduct and the derivative evidence has become so attenuated as to dissipate the taint, or if the government can demonstrate that the evidence inevitably would have been discovered by lawful means.' *Commonwealth* v. *Fredette*, 396 Mass. 455, 459 (1985) (citations omitted)." *Commonwealth* v. *Barros*, 56 Mass. App. Ct. 675, 679 (2002).

As to the cash and the plastic baggies, the independent source rule requires the denial of the suppression motion. This is so because these items were discovered not as a product of the unlawful entry, but during the later execution of the search warrant, and because, even if the information obtained from the unlawful entry is excised from the search warrant application, the application still established probable cause for the proper issuance of the warrant. See *DeJesus*, 439 Mass. at 624-627, citing *Segura*, 468 U.S. at 813-814.

---

"realized in advance that once they made their presence known, a security search would be necessary . . . the only viable question was whether exigent circumstances justified the [officers'] initial decision to reveal their presence." *United States* v. *Curzi*, 867 F.2d 36, 43 (1st Cir. 1989), citing *United States* v. *Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986). See *United States* v. *Curzi*, *supra* at 43 n.6, citing *United States* v. *Cresta*, 825 F.2d 538, 553 (1st Cir. 1987), cert. denied sub nom. *Impemba* v. *United States*, 486 U.S. 1042 (1988). See also *United States* v. *Edwards*, 602 F.2d 458, 468-469 (1st Cir. 1979); *United States* v. *Hidalgo*, 747 F. Supp. 818, 825-829 (D. Mass. 1990); *United States* v. *Torres*, 274 F. Supp. 2d 146, 154-157 (D.R.I. 2003). Although generally we are not bound by decisions of the First Circuit, in criminal cases we are especially mindful of opinions of that court on questions of Federal constitutional law because our decision may ultimately be reviewed in habeas corpus proceedings in a United States District Court that would be bound by First Circuit authority. See *Commonwealth* v. *Montanez*, 388 Mass. 603, 604 (1983), and cases cited. We also observe the numerous decisions of other circuits of the United States Court of Appeals, and of other States, that suggest a similar result would obtain in many of those jurisdictions. See 3 LaFave, Search & Seizure § 6.5(b), (c) (4th ed. 2004), collecting cases, and especially *id.* at 397 & n.41; *id.* at 400-403 & nn.52, 56-59; *id.* at 408 & n.76; *id.* at 415-426 & n.124 (citing *DeJesus*); *id.* at 428-429 & n.147.

The Commonwealth has not argued that one of the exceptions to the exclusionary rule would allow in evidence the statement of the defendant or the marijuana found on his person at the time of arrest. Good reason exists for the implicit concession. Although the police had probable cause to arrest the defendant, by doing so in his home without justification for the lack of a warrant they violated the rule of *Payton* v. *New York*, 445 U.S. 573, 590 (1980). The statement and the marijuana must be suppressed. See *Commonwealth* v. *Marquez*, 434 Mass. 370, 378 (2001) ("The penalty for an unlawful arrest in a defendant's dwelling is the suppression of anything seized at the time of the arrest, either from the defendant or in the dwelling, and any statements made at the time of the arrest"); *Commonwealth* v. *Molina*, 439 Mass. at 211.

More complex is the admissibility of the handgun. On one hand, the defendant's statement alerted the police to its presence and location, and the warrant application and the warrant expressly referred to the handgun. On the other hand, the police did not search for or seize the handgun until they executed the warrant. The question, then, is whether the handgun must be suppressed as fruit of the unlawfully obtained statement or whether it ought to be admitted under the inevitable discovery doctrine. Although the judge made no finding on the point, we shall assume for purposes of decision (and to the benefit of the defendant) that as a factual matter the police relied on the defendant's statement in locating and seizing the handgun.[12]

The inevitable discovery rule under art. 14 "requires a two-step analysis which focuses, first, on the question of inevitability, and, second, on the character of the police misconduct." *Commonwealth* v. *Perrot*, 407 Mass. 539, 546 (1990). "[T]he Commonwealth has the burden of proving the facts bearing on inevitability by a preponderance of the evidence and, once the relevant facts have been proved, that discovery by lawful means was 'certain as a practical matter.' " *Id.* at 547, quoting from *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117 (1989). "[T]he severity of the constitutional violation is critical in

---

[12]If there were no factual nexus between the statement and the seizure, the handgun would be admissible under the independent source rule, just as the cash and plastic baggies.

deciding whether to admit evidence that it is shown would inevitably have been discovered." *Commonwealth* v. *O'Connor, supra* at 118. "Bad faith of the police, shown by such activities as conducting an unlawful search in order to accelerate discovery of the evidence, will be relevant in assessing the severity of any constitutional violation." *Ibid.*

Although the judge here made no specific findings regarding inevitable discovery,[13] given the findings she did make and under any rational view of the evidence introduced by the Commonwealth at the suppression hearing, the circumstances here met the first prong of the test. As noted earlier, the warrant properly issued on probable cause even excluding the information obtained from the unlawful entry. The terms of the warrant authorized the police to search for cocaine and any related paraphernalia.[14] As the undisputed evidence revealed, the handgun was stored in an upstairs dresser drawer, on the same floor where the police believed the cocaine was kept. Given that a handgun is at least as large as some of the items being sought under the warrant, we conclude that police discovery of the handgun in plain view while searching for the cocaine or related items was "certain as a practical matter." *Commonwealth* v. *O'Connor, supra* at 117. See *Commonwealth* v. *Wills,* 398 Mass. 768, 774-775 (1986) ("The permissible intensity of a search is determined by the description of the items to be seized. The size of the object or objects sought affects the appropriate scope of the search. . . . For example, police officers may look in an envelope if they are searching for drugs" [citations omitted]). See also *Commonwealth* v. *Silva,* 61 Mass. App. Ct. 28, 31 (2004) (outlining requirements of plain view doctrine:

---

[13]This circumstance would make a remand for further findings desirable in many cases. See *Commonwealth* v. *O'Connor,* 406 Mass. at 117 ("Rather than adopt the imprecisely defined 'clear and convincing' standard of proof, we prefer to require a high level of specificity and detail in a judge's findings and analysis of the facts"). Here, however, given the findings that were made and the undisputed evidence, we believe a remand both unnecessary and judicially uneconomical.

[14]The warrant authorized a search for "[c]ocaine[,] . . . [a]ll books, monies, documents, articles, implements, and paraphernalia, related to the illegal possession, manufacture, and distribution of cocaine[,] [and] [a] .25 caliber semi-automatic handgun."

lawful vantage point; immediately apparent incriminating character; and inadvertent discovery).

We next consider the severity of the constitutional violation. The statement was the result of an unlawful in-home arrest flowing from an entry based on probable cause, but without justification for the lack of a warrant, and conducted for the purpose of impounding the premises while a warrant could be sought. While the lack of a warrant is not to be taken lightly, there is no indication that the police acted in bad faith to accelerate the discovery of the evidence through an unconstitutional shortcut. See *Commonwealth* v. *O'Connor, supra* at 118 & n.5. Indeed, the police action here, in February, 2002, predated the opinion of the Supreme Judicial Court in *DeJesus,* 439 Mass. 616, 621 (2003), stating for the first time that an *interior* impoundment of premises requires, in addition to probable cause to search, "specific information supporting an objectively reasonable belief that evidence will indeed be removed or destroyed" while a warrant is sought. Prior to that decision, our cases had drawn no distinction between exterior and interior impoundments, and the decisions seemingly approved of entries to secure premises simply on the basis of persons being present therein. See, e.g., *Commonwealth* v. *Blake,* 413 Mass. at 829-830[15]; *Commonwealth* v. *Voris,* 38 Mass. App. Ct. at 380-381 & n.1; *Commonwealth* v. *Navarro,* 39 Mass. App. Ct. at 163-164. Thus, the police here were simply doing what a reasonable view of the existing case law allowed them to do: they acted on probable cause, they limited their initial intrusion to securing the premises, they sought a warrant, and they conducted no further search until the warrant arrived. In the circumstances, we do not view the constitutional violation as severe enough to require suppression. Because both aspects of the inevitable discovery rule are satisfied, the handgun should be allowed in evidence.

The order denying the motion to suppress is affirmed as to the handgun, the cash, and the plastic baggies. The balance of the order is reversed, and a new order shall enter suppressing the marijuana and the defendant's statement to police.

*So ordered.*

---

[15]Regarding the facts of *Blake,* see note 4, *supra.*